476 So.2d 444 (1985)
Timothy Phillip WATTIK and Charles Wattik on behalf of Minor, David J. Wattik, Appellant-Appellee,
v.
The LEWIS GROCER CO. dba County Market and the Travelers Insurance Company, Appellee-Appellant.
No. 17174-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
*446 Bruscato, Loomis & Street by C. Daniel Street, Monroe, for appellant-appellee.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for appellee-appellant.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
This is an appeal in a personal injury action. The plaintiffs are Timothy Phillip Wattik and Charles Wattik on behalf of his minor son, David J. Wattik. Timothy P. Wattik appeals the trial court's denial of an award for physical injury and both the plaintiffs seek an increase in the trial court's award for emotional distress. The defendants are The Lewis Grocer Co., d/b/a County Market and their insurer, The Travelers Insurance Company. They appeal, contesting the trial court's finding of vicarious liability and seeking a decrease in the trial court's award for emotional distress.
The parties' assignments of error present the following issues for our determination:
(1) Whether, under the facts of this case, the defendant/employer, The County Market, should be held vicariously liable for the acts of its employee.
(2) Whether the assault committed by defendant's employee was the cause of plaintiff's injuries.
(3) Whether or not the trial court's award for the plaintiffs' emotional distress was adequate.
The incident giving rise to this appeal occurred on the night of November 21, 1983, at approximately 10:00 p.m. Timothy P. Wattik and his younger brother, David J. Wattik, both caucasian males, had pulled into the County Market Grocery Store parking lot in order to let their mother out to shop. They had previously been to Godfather's Pizza where Timothy had one beer. After a few minutes in the parking lot, they moved their vehicle into a fire lane adjacent to the front door of the store, intending to pick up their mother who was almost through shopping. At the time, an employee of the County Market, Kenneth J. Woods, a young black male, was sweeping or blowing off the sidewalk. Here the testimony diverges. Kenneth Woods claims he overheard the Wattiks talking about him and he approached them to ask them why they were talking about him. The Wattiks, on the other hand, claim Kenneth Woods initially approached them to ask them to move their vehicle out of the fire lane. The trial court found that the employee, Kenneth J. Woods, initially approached the Wattiks to ask them to move their car out of the fire lane. Once Kenneth Woods approached the Wattiks, an argument ensued in which both sides exchanged various derogatory epithets.
One of County Market's grocery checkers overheard the disturbance and reported it to the store's assistant manager, Mr. Bill Wright. Mr. Wright came outside and intervened. He told the Wattiks to mind their own business and instructed his employee, Kenneth Woods, to go back inside the store.
Once inside, Mr. Wright assigned Kenneth Woods to work and watched him walk to the back of the store. However, shortly thereafter, Kenneth Woods clocked out on the store's timeclock, went back outside and fetched a machete out of his car. He then went over to the Wattik vehicle, carrying the machete wrapped in newspaper. More words were exchanged and according to the plaintiffs' testimony, Kenneth Woods took the machete out of the newspaper and assaulted the plaintiffs with it. The assault consisted of jabbing the machete in and out of the partially opened windows of plaintiffs' vehicle. Kenneth Woods was then observed by disinterested witnesses to run around the corner and hide the machete under a car.
The Wattiks then exited the car in order to report the incident to the store's assistant manager. Timothy Wattik claimed at trial that he received his physical injury upon exiting the car. He claimed that he was badly shaken due to the fear inflicted by the machete assault and that this *447 caused him to fall and injure his left knee and his back. A police officer was eventually called and Kenneth Woods was arrested for aggravated assault.

VICARIOUS LIABILITY OF THE EMPLOYERTHE COUNTY MARKET
An employer is liable for the tortious acts of his employee if the employee was acting within the course and scope of his employment at the time of the tort. LSA-C.C. art. 2320; LeBrane v. Lewis, 292 So.2d 216 (La.1974). The Louisiana Supreme Court in LeBrane set forth the following factors to consider in determining whether an employer should be held liable for the acts of his employee. First, whether the tortious act was primarily employment-rooted. Second, whether the act was reasonably incidental to the performance of the employee's duties. The court also noted as a relevant consideration whether the tortious act occurred on the employment premises and during the hours of employment. LeBrane, supra at 218. However, the Louisiana Supreme Court has more recently indicated that not all the factors have to be present in order to find the employer liable and that each case must be analyzed under its own facts. Miller v. Keating, 349 So.2d 265 (La.1977). As noted in both LeBrane and Miller the determinative question is whether the tortious conduct of the employee "was so closely connected in time, place and causation to his employment-duties, as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." LeBrane, supra at 218; Miller, supra at 268. In the instant case, the trial court found that the employee, Kenneth Woods, was in the process of performing his duties when the original altercation occurred, and that the subsequent assault was reasonably incidental to the performance of those duties. Therefore, the trial court found that The County Market was vicariously liable for the acts of its employee.
Based upon a review of the record we cannot conclude that the trial court was clearly wrong in its finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). While there may be conflicting testimony as to the precise reason Kenneth Woods first approached the Wattiks' vehicle, there is no questioning the fact that at the time the original dispute arose, Kenneth Woods was engaged in employment-related duties. He was sweeping or blowing off the sidewalk when the confrontation began.[1] Shortly after the dispute arose, the assistant manager of The County Market intervened and instructed Kenneth Woods to go work inside. Kenneth Woods followed the assistant manager into the store, but then within a few minutes he clocked out and came back outside to perpetrate the assault.
As found by the trial court, the time interval in the instant case was not sufficiently long to break the connection between the employment-rooted altercation and the subsequent assault. As in LeBrane the dispute which erupted into violence was "primarily employment-rooted." The assault was reasonably incidental to the performance of the employee's duties of sweeping or blowing off the sidewalk and in requesting the plaintiffs to move their vehicle out of the fire lane. The fact that keeping the fire lane clear may not have been one of Kenneth Woods' assigned duties is inconsequential. See Campbell v. Mouton, 412 So.2d 191 (La.App.3d Cir. 1982), wherein the third circuit held that just because an employee was not assigned the particular duty which resulted in harm, the employer was not absolved of liability, as long as the duty undertaken was designed to promote the interest and welfare of the employer. Apparently, Kenneth Woods perceived it to be his duty to keep *448 the fire lane clear and such an action can reasonably be interpreted as promoting the interest and welfare of his employer so as to bring it within the scope of his employment.
Finally, we have considered Scott v. Commercial Union Ins. Co., 415 So.2d 327 (La.App.2d Cir.1982), relied upon by appellees in brief, and find it factually distinguishable from this case. In Scott, the plaintiff, an attorney, visited an equipment company to check on repairs to his tractor, to confer with the company official on company legal matters, and to discuss with an employee of the company the employee's wife's arrearages on a mortgage note held by the plaintiff. After finishing his business with the company, the plaintiff and the employee began discussing the nature of repairs to plaintiff's tractor. The two decided to go inspect the tractor and on the walk over to where the tractor was located, the plaintiff brought up the subject of the delinquent note payments, whereupon the employee suddenly struck the plaintiff in the mouth. Upon these facts, this court rejected a finding of vicarious liability on the basis that the employee's action was "motivated by purely personal considerations entirely extraneous to the employer's interests." Scott, supra at 329. This, however, is not the case in the instant action.
The employee Kenneth Woods' assault clearly arose out of the performance of his employment duties. The record is void of any evidence to indicate that the altercation arose from a pre-existing and personal business consideration, as was the case in Scott. The parties in the instant case would likely have never come in contact with one another, but for Kenneth Woods' performance of his employment duties. And while the dispute here may have ultimately evolved into a personal matter, the initial contact clearly resulted from Kenneth Woods' performance of his employment duties.
Accordingly, we find, with the trial court, that the employer is liable for any damages inflicted by its employee, Kenny Woods, in this incident.

CAUSATION
In Louisiana, a defendant may not be liable unless his act is the cause-in-fact of the plaintiff's injury. LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Cause-in-fact is best defined as an act that is a "substantial factor" in bringing about the harm. Id. In determining whether the act is a substantial factor one must consider "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." Restatement of Torts, 2d § 433(B). In the present case, the trial court found the plaintiff, Timothy P. Wattik, failed to prove that Kenny Woods' tortious act caused his physical condition. Under the evidence presented we do not find the trial court was clearly wrong in this ruling.
The only direct evidence offered to support Timothy Wattik's contention that he injured himself in exiting the car is his own self-serving testimony. While Timothy Wattik's brother testified that he heard the plaintiff groan, he did not actually see Timothy Wattik fall. In fact, no one actually saw Timothy Wattik fall. The trial court obviously did not believe that Timothy suffered an injury on this occasion.
Moreover, as found by the trial court, Timothy Wattik's own testimony concerning causation is extremely suspect due to numerous inconsistencies. Timothy Wattik's petition states that he was injured in an effort to escape the assault by Kenneth Woods. However, later in a deposition hearing, Timothy Wattik testified that he was injured after the assault, as he was exiting the car to go report the assault to the assistant manager, Bill Wright. Further, Dr. Capalongan testified that Timothy Wattik told him that he had sustained his injuries by bumping his left knee against the car in an attempt to move the car quickly. Then at trial, Timothy Wattik repeated the story of the slip and fall as he tried to step out of the car. Thus, Timothy Wattik offered a number of different versions *449 to explain how the alleged injury occurred.
Timothy Wattik's credibility is further suspect due to his inconsistent statements in regard to his loss of earnings. He testified at deposition that he was employed by American Public Life Assurance Company at the time of this incident and that he had reported his earnings on his income tax returns. At trial he testified he was selling insurance under his father's license and that he had personally filed no tax returns.
Even the indirect evidence offered to prove causation in this case is questionable. Timothy Wattik's father, Charles Wattik, testified he observed Timothy in pain after the incident. However, the trial judge discounted this testimony because the father, like the son, had woven a tangled web of false testimony. While the trial judge did not point to a particular instance where Charles Wattik's testimony was untruthful, we note that questions of credibility are properly allocated to the trier of fact and in the absence of manifest error, should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); and Williams v. Allstate Ins. Co., 367 So.2d 1318 (La.App.4th Cir. 1979). The trial judge considered the medical evidence that Timothy Wattik's knee problems pre-existed the alleged injury. This fact was sufficient to justify the trial judge in attributing the injury to a source other than this alleged incident. Based on the evidence presented we find no such manifest error in the trial court's determination that Timothy did not injure himself on the occasion of this incident.
Finally, there are two additional and undisputed facts that suggest a lack of causation. First, Timothy Wattik did not complain of the injury to the officer or to anyone on the scene. Second, Timothy Wattik did not even make an attempt to see a doctor until some nine days after the assault occurred. We realize that standing alone, these last two factors might not be sufficient to justify a finding that the plaintiff failed to prove causation, but when coupled with the numerous contradictions in his testimony and the lack of any credible indirect testimony, such a finding is not clearly wrong.
Under these circumstances, we do not find any manifest error in the trial judge's denial of an award for physical injury to the plaintiff, Timothy P. Wattik.

MENTAL ANGUISH DAMAGES
The Wattiks contend that the trial court's award of damages for emotional distress was inadequate, while the appellees contend that the award was excessive.
The standard of appellate review in regards to a trial court's award of damages is limited to guaranteeing that the trial judge did not so excessively abuse its much discretion that one's conscience would be shocked if such an award would be allowed to remain untouched. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); and Hanzy v. Sam, 385 So.2d 355 (La. App.1st Cir.1980), writ refused 386 So.2d 357 (La.1980).
In the present case, while the awards of $600 and $900 for emotional damages may seem slightly low, we do not find them shocking to the judicial conscience. We are impressed by the overwhelming evidence to suggest that the Wattiks actually provoked the assault. By their own admission the plaintiffs hurled racial slurs at Kenneth Woods. We also note that even though the plaintiffs had the keys in the ignition during this entire episode and were free to leave at any time, they consciously chose to stay in order to "call the black man's bluff." While the trial court did not specifically assign provocation as a reason for reducing damages, the facts fully support this rationale. See Cappo v. Vinson Guard Service, Inc., 400 So.2d 1148 (La.App.1st Cir.1981); and Watts v. Aetna, 309 So.2d 402 (La.App.2d Cir.1975).
Accordingly, finding no error in the trial court's holding in this case, we affirm. Costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] It is further conceded by all parties to this appeal that at some point Kenneth Woods asked the Wattiks to move their vehicle from the fire lane. The evidence reveals that this request gave rise to further name-calling and further cements the link between the employee's employment duties and the subsequent assault.