654 So.2d 474 (1995)
Smart EMOAKEMEH
v.
SOUTHERN UNIVERSITY, Raymond Byrd Arvie, Dennis Ray Taylor, Jonathan K. Thornton, and Insurance Companies A, B, C and D.
No. CA 94 1194.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
*475 John W. deGravelles, Taylor L. Caffery, Baton Rouge, for appellee plaintiff Smart Emoakemeh.
W. Steven Mannear, Baton Rouge, for appellant defendant Southern University.
Cedric A. Upshaw, Baton Rouge, and Arthur R. Thomas, Baton Rouge, for appellee Raymond Byrd Arvie.
Before FOIL, WHIPPLE and KUHN, JJ.
FOIL, Judge.
This appeal challenges a trial court's liability and quantum determinations, as well as the trial court's assessment of court costs to the successful plaintiff. After a thorough review of the record, we affirm the liability and quantum rulings, but reverse the cost assessment.

BACKGROUND
This tort litigation was filed by Smart Emoakemeh, a Nigerian national, who was injured by a gunshot wound during an altercation in a dormitory at the Southern University campus in Baton Rouge. Plaintiff named as defendants Raymond Arvie, who fired the shot, Dennis Taylor, who owned the gun, and Jonathan Thornton, a participant in the altercation. He also sued the State of Louisiana, through the Southern University Board of Supervisors, (Southern) on theories of negligence and vicarious liability under La.Civ.Code art. 2320 as the employer of defendants Arvie and Taylor.
Following a trial, the court ruled that Arvie was 90% at fault in causing plaintiff's injuries, while Taylor was found to be 10% at fault. The court found Southern vicariously liable as the employer of Arvie and Taylor. Plaintiff was awarded damages in the amount of $60,905.00, consisting of: $4,905.00 for past medical expenses; $12,000.00 for pain and suffering; $38,000.00 for disability; and $6,000.00 for mental anguish and distress. *476 The court also assessed plaintiff with all court costs, including expert witness fees in the amount of $650.00.
Southern took this appeal, contesting the trial court's liability ruling. Plaintiff answered the appeal, challenging the amount of the damage award as impermissibly low, as well as the trial court's assessment of costs.

LIABILITY
The facts contained in the record which are pertinent to the liability issue are as follows: Plaintiff attended Southern on a tennis scholarship, and was acquainted with Jonathan Thornton. Raymond Arvie and Dennis Taylor were enrolled in Southern's graduate program, and were employed by Southern as resident assistants at Jones Hall. On July 20, 1988, Arvie observed that Thornton, a Jones Hall resident, was not wearing a shirt in violation of dorm rules. Arvie approached Thornton and told him that he had broken the dorm rules. A verbal dispute ensued between the two men, which escalated. Arvie obtained Taylor's permission to get a gun Taylor had stored in his dorm room. Thereafter, with the weapon concealed in his pocket, Arvie found Thornton and the two continued arguing. Plaintiff observed the dispute, and attempted to intervene. At some point, a shot was fired by Arvie, and the bullet hit plaintiff in the right thigh.
The record reflects that as resident assistants, Arvie and Taylor were responsible for enforcing the dorm's regulations. On the night in question, they were on duty after having relieved the head resident. Southern's manual for College Work Study Students states that graduate assistants are responsible for observing and assisting the head resident in regulating student behavior, and are responsible for relieving the head resident and assisting the head resident in providing 24 hour per day coverage.
Southern's Code of Conduct prohibits students from possessing dangerous weapons. Arvie testified that he knew he was in violation of his employer's rules by having a weapon in his possession, but stated that he felt he needed protection during the altercation with Thornton. He relayed that Thornton had been having disputes with a number of the dorm's residents, and some individuals were afraid of him. Arvie testified that Thornton had threatened him with bodily harm in the past. He further attested that the discharge of the weapon was entirely accidental, and he had no intention to hit either Thornton or plaintiff when the gun went off.
Vicarious liability is based on La.Civ.Code art. 2320, which states that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Under this article, liability extends only to the employee's tortious conduct that is within the course and scope of the employment. Orgeron v. McDonald, 93-1353, p. 4 (La. 7/5/94); 639 So.2d 224, 226. Whether an employee is acting within the course and scope of his employment is a question that can only be answered by general rules because of the unending contexts in which the question may arise. Id.
As a general rule, the jurisprudence has identified four factors to consider in making a vicarious liability determination, including whether the tortious act: (1) was primarily employment rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during work hours; and (4) occurred on the employer's premises. LeBrane v. Lewis, 292 So.2d 216, 218 (La. 1974); Samuels v. Southern Baptist Hospital, 594 So.2d 571, 573 (La.App. 4th Cir.), writ denied, 599 So.2d 316 (La.1992). It is not necessary that each of the factors be present in each case, and each case must be decided on its own merits. Id. Under the LeBrane test, an employer is responsible for the negligent acts of its employee when the conduct is so closely connected it time, place and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business. Orgeron v. McDonald, 93-1353, p. 4; 639 So.2d at 227. The scope of the risks attributable to an employer increases with the amount of authority and freedom of action granted to the employee in performing the assigned tasks. Ermert v. Hartford Insurance *477 Company, 559 So.2d 467, 477 (La.1990). However, an employer is not responsible for an employee's conduct that is motivated by purely personal considerations entirely extraneous to the employer's interests. LeBrane v. Lewis, 292 So.2d at 218.
In this case, the tortious acts occurred on the employer's premises during the hours of employment. However, Southern contends that its employees' acts were clearly outside the scope of their employment responsibilities. Southern urges that the conduct of Arvie and Taylor which led to the negligent discharge of the weapon was not even remotely related to their employment responsibilities as resident assistants. First, it is submitted that resident assistants are responsible only for identifying and reporting dorm violations, and those responsibilities in no way include confronting students about dorm infractions, arguing and fighting with students, or shooting at anyone. Secondly, Southern points out that Arvie and Taylor's conduct in possessing the gun is strictly prohibited by Southern's Rules of Conduct. Lastly, Southern contends that the conduct of Arvie and Taylor in no way furthered Southern's own interest, which is the education of students, but instead represented a purely personal vendetta Arvie was pursuing against Thornton.
At the outset, we note that Southern's argument incorrectly focuses on the tortious acts themselves which produced plaintiff's injury. However, in a vicarious liability case based on negligence, it is only necessary to determine whether the employee's general activities at the time of the tort were within the scope of his employment. Ermert v. Hartford Insurance Company, 559 So.2d at 478. Because the focus is on the general activities at the time of the tort, rather than the specific tortious act, the fact that the act is forbidden or is done in a forbidden manner does not remove it from the scope of employment as long as the duty undertaken was designed to promote the interest and welfare of the employer. Ermert v. Hartford Insurance Company, 559 So.2d at 479; Campbell v. Mouton, 412 So.2d 191, 195 (La.App.3d Cir.), writ denied, 415 So.2d 954 (La.1982).
Based on these precepts, the fact that Arvie and Taylor violated Southern's Code of Conduct by possessing and using a dangerous weapon, and the fact that plaintiff was injured by Arvie's negligent discharge of the weapon does not, standing alone, remove Arvie's and Taylor's conduct from the scope of their employment. In a similar case, an employer was held vicariously liable where an employee clocked himself out and committed an aggravated assault outside of the store. Wattik v. Lewis Grocer Co., 476 So.2d 444 (La.App. 2d Cir.1985). The Wattik plaintiffs were parked in a vehicle in front of a store in a fire lane, when the store's employee, who was outside sweeping the sidewalk, asked them to move their car. An argument ensued, and the store manager told his employee to go back into the store. The employee complied, but soon clocked himself out and retrieved a machete out of his car, which according to the plaintiffs, he used to assault them.
The appellate court in Wattik found no manifest error in the trial court's determination that the assault occurred during the course and scope of the employment. The court agreed that there was no question that when the original dispute arose, the employee was engaged in employment-related duties. The Wattik court reasoned that the time interval was not sufficiently long to break the connection between the employment-rooted altercation and the subsequent assault. Therefore, since the dispute which resulted in violence was primarily employment-rooted, vicarious liability was found.
The trial court's determination that a particular act is within the course and scope of employment for the purposes of vicarious liability is a factual finding governed by the manifest error rule. Ermert v. Hartford Insurance Company, 559 So.2d at 478; Samuels v. Southern Baptist Hospital, 594 So.2d at 574; Wattik v. Lewis Grocer Co., 476 So.2d at 447. The application of this standard of review mandates that this court can only reverse a lower court's factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes *478 that the finding is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Considering the principles of vicarious liability outlined above in the context of our review of the record, we cannot say that the trial court had no reasonable basis for concluding that Arvie and Taylor were acting within the scope of their employment at the time of plaintiff's injury. As in Wattik, when the initial dispute arose between Arvie and Thornton, Arvie informed Thornton that he was in violation of dorm rules, an activity which is clearly within the scope of a resident assistant's duty to assist in regulating student behavior. The events leading up to the accidental shooting were activated, at least in part, by a purpose to serve the employer. Thus, the dispute which erupted into violence occurred during the time of the employment, on the employer's premises and was primarily employment-rooted. The trial court's ultimate factual conclusion that Arvie's and Taylor's tortious conduct was sufficiently connected in time, place and causation to their employment duties so as to constitute a risk of harm attributable to Southern is not manifestly erroneous, and we decline to disturb it.

QUANTUM
We next address plaintiff's challenges to the damage awards. First, plaintiff complains that the trial court should have entered an award for loss of earning capacity because plaintiff showed at trial that he had the potential to be a professional tennis star; however, the gun shot wound to his right thigh shattered that dream. It is not disputed that plaintiff is unable, because of the injury, to engage in the type of activity required of a professional tennis player. However, it is also true that plaintiff is not disabled from other tennis avenues, such as teaching tennis.
Plaintiff's attempt to predicate a loss of earning capacity was based primarily on his assertion that if he had been able to play professional tennis and had been ranked at a high enough spot, he could have earned a high salary teaching tennis at a prestigious racquet club. Mr. Duke Ozidor, a Nigerian national who did go on to play professional tennis, testified that because of his high ranking (he was once ranked 57th in the world in singles and in the top ten players in the world in doubles), he was able to earn a living after giving up professional tennis by teaching tennis at a racquet club, where he charges anywhere from $65.00 to $100.00 per hour. Mr. Ozidor stated that on the low end of the spectrum, a highly ranked former professional tennis player could expect to make about $20,000.00 to $30,000.00 per year teaching tennis. He also testified that a college tennis player, entering the professional tennis circuit after college, could earn from $20,000.00 to $500,000.00 per year playing tennis.
Plaintiff offered evidence showing that before he came to the United States to play tennis, at age 16, he was ranked 826 in the world by the Association of Tennis Players (ATP), and at age 17, he was ranked 831 by that organization. However, the evidence also showed that several years later, plaintiff lost his membership in the ATP because he lost in qualifying rounds of tournaments that determine ranking in the ATP. Additionally, plaintiff testified that in his freshman year at Southern, he was ranked number one on the tennis team. Following the injury, his ranking dropped to third or fourth for the remainder of his college career.
The only witness to testify regarding plaintiff's potential to play professional tennis was Mr. Ozidor, who played tennis against plaintiff on one occasion, and witnessed plaintiff play during sporadic trips to Nigeria. He admitted that questions regarding plaintiff's potential as a future tennis star were very difficult to answer. Nevertheless, he stated that because of plaintiff's ability and the fact that he played in previous ATP tennis tournaments, one could "deduct that he has the potential of perhaps furthering his career in the professional field of tennis." He could not state that plaintiff had the potential to be a world class tennis player, but only that the potential "was there." We note, however, that no one who played tennis with plaintiff, or coached him after his arrival in the United States, testified on his behalf regarding his tennis abilities.
*479 Plaintiff bears the burden of proving with legal certainty every item of damages claimed, and must prove loss of future earning capacity with reasonable certainty. See Henry v. National Union Fire Insurance Company, 542 So.2d 102, 105 (La.App. 1st Cir.), writs denied, 544 So.2d 405 (La. 1989). Plaintiff sought to prove that he had the potential to play world class tennis that would have garnered him a top-notch teaching job at a prestigious racquet club. The trial court no doubt believed that the totality of the evidence on plaintiff's tennis abilities was far too speculative to support such an award. After reviewing the record, we cannot say that the trial court abused its great discretion in declining to award plaintiff damages for loss of earning capacity.
Additionally, plaintiff complains that the court's general damage award of $56,000.00 is far too low and should be increased. However, the general damage award may not be disturbed by this court unless we find that the award is below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corporation, 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Based on our review of the record, we cannot say that the award is so low as to be "contrary to right reason," and therefore, we decline to find an abuse of the trial court's vast discretion in setting the general damage award. Id.

COSTS
Plaintiff challenges the trial court's assessment of all court costs to him. The only reason expressed by the trial court for taxing all costs to the successful plaintiff was that it did not usually cast the State for costs in lawsuits. However, by virtue of La.R.S. 13:5112(A), the trial court was authorized to assess costs allowable under law to the State.
While it is true that a trial court has wide discretion in assessing costs, in the absence of some equitable reason, costs should not be assessed against a wholly prevailing party. Pinion v. Louisiana Farm Bureau, 590 So.2d 1230, 1235 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1301 (La. 1992). There is no evidence in the record to indicate that the successful plaintiff engaged in conduct which would justify assessment of costs against him. See Ratcliff v. Town of Mandeville, 551 So.2d 761, 763 (La.App. 1st Cir.1989), writ denied, 556 So.2d 37 (La. 1990). Thus, we find that the trial court erred in taxing all costs to the plaintiff. We hold that the State should have been assessed with all costs allowed by law incurred in the trial of this matter, and the trial court erred in ruling otherwise.

CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed with respect to the trial court's liability and quantum determinations. However, we reverse the trial court's cost assessment and order that the State be taxed with all court costs allowed by law. Costs of this appeal, in the amount of $432.57, are assessed against the State of Louisiana.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.