LIONEL JONES AND WILLIE
WILSON

VERSUS

MARYLAND CASUALTY
COMPANY, ZURICH
AMERICAN INSURANCE
COMPANY, POWELL'S
CABLE COMPANY AND
KAREN A. JONES

*      NO. 2018-CA-0552

* 

*      COURT OF APPEAL

* 

*      FOURTH CIRCUIT

*      STATE OF LOUISIANA

\* \* \* \* \* \* \*

**CONSOLIDATED WITH:**

COURTNEY GILLARD

VERSUS

FRANK POWELL, JR., POWELL
CABLE SERVICE, LLC, CABLE
MAN, INC., JOHN DOE AND
JEFFERSON PARISH TRANSIT

**CONSOLIDATED WITH:**

NO. 2018-CA-0553

**CONSOLIDATED WITH:**

TERRY R. WHITE

VERSUS

POWELL CABLE SERVICE, LLC,
KAREN A. JONES, MARYLAND
CASUALTY COMPANY, LIONEL
JONES, JEFFERSON PARISH
TRANSIT AND/OR VEOLIA
TRANSPORTATION SERVICES
INC., AND OLD REPUBLIC

**CONSOLIDATED WITH:**

NO. 2018-CA-0554

**CONSOLIDATED WITH:**

EVERETT HARRIS

VERSUS

MARYLAND CASUALTY
COMPANY, POWELL'S CABLE
SERVICE, LLC, KAREN A. JONES,
AND COX COMMUNICATIONS
LOUISIANA, LLC

**CONSOLIDATED WITH:**

NO. 2018-CA-0555

1

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2012-07492, DIVISION "E"
Honorable Melvin C. Zeno, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Pro Tempore Judge Madeline Jasmine)

**LEDET, J., CONCURS WITH REASONS**
**JASMINE, J., CONCURS IN THE RESULT AND CONCURS WITH THE REASONS ASSIGNED BY JUDGE LEDET**

Michael Jay Begoun
WOLFE, BEGOUN & PICK, L.L.C.
2200 Tulane Avenue, Suite 200
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLEE, EVERETT HARRIS

Cesar R. Burgos
Robert J. Daigre
Gabriel O. Mondino
George M. McGregor
BURGOS & ASSOCIATES, L.L.C.
3535 Canal Street
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFFS/APPELLEES, LIONEL JONES AND
      WILLIE WILSON

Jody Forester Jackson
Mary Bubbett Jackson
JACKSON + JACKSON
201 St. Charles Avenue, Suite 2500
New Orleans, LA 70170

      COUNSEL FOR DEFENDANT/APPELLANT, POWELL'S CABLE
      SERVICES, LLC D/B/A POWELL'S CABLE COMPANY

                                                    **AFFIRMED**
                                            **May 11, 2022**

This appeal arises from an accident wherein a cable company truck struck a public transit bus and allegedly injured the bus driver as well as the passengers. Following a bench trial, the trial court found that the driver of the company truck was acting in the course and scope of her employment at the time of the accident. The trial court awarded the plaintiffs damages.

The cable company appeals contending that plaintiffs did not present evidence that the cable company truck driver was acting in the course and scope of her employment at the time of the accident and that the trial court overstepped his role by asking the cable company owner a question on the witness stand.

After reviewing the trial testimony and evidence presented, we find that the trial court did not err in finding that the cable company employee was acting in the course and scope of her employment at the time of the accident because the evidence established she was acting in the course and scope of her employment. Additionally, the trial court did not abuse its discretion by asking a witness one question, in that the trial court has great discretion and there is no jury to mislead in a bench trial. As the cable company's assignments of error lack merit, the judgment of the trial court is affirmed.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 16, 2012, Lionel Jones was operating a Jefferson Parish Transit ("JPT") bus when a Powell's Cable Services, LLC d/b/a Powell's Cable Company ("Powell's Cable") truck, driven by Karren Jones, struck the bus. Lionel Jones and several of the JPT bus passengers allegedly sustained injuries as a result.

Lionel Jones and Willie Wilson, a JPT passenger, filed suit against Maryland Casualty Company ("MCC"), as an insurer of Powell's Cable; Zurich American Insurance Company ("Zurich"), as an insurer of Powell's Cable; Powell's Cable; and Karren Jones for the injuries sustained during the accident. Courtney Gillard, a JPT passenger, filed suit against Frank Powell, Jr.; Powell's Cable; Cable Man, Inc.; John Doe (driver of the JPT bus); and JPT. Terry White, a JPT passenger, filed suit against Powell's Cable; Karren Jones; MCC; JPT and/or Veolia Transportation Services, Inc.; Lionel Jones; and Old Republic Insurance Company, an insurer of JPT. Everett Harris,[1] a JPT passenger, filed suit in First City Court against MCC; Powell's Cable; Karren Jones; and Cox Communications Louisiana, LLC.[2] The First City Court lawsuit was transferred to Orleans Parish Civil District Court and the four lawsuits were consolidated.

Lionel Jones and Mr. Wilson filed a Motion for Partial Summary Judgment on the issues of liability and insurance coverage as to MCC and Zurich. Conversely, MCC and Zurich filed a Motion for Summary Judgment averring that the Powell's Cable truck driven by Karren Jones was removed from the Powell's Cable insurance policy prior to the accident. The trial court denied both Motions for Summary Judgment. MCC and Zurich then re-urged the same Motion for

---

[1] Mr. Harris later stipulated that his damages did not exceed $50,000.00.

[2] Mr. Harris maintained that Cox "issued a contract for installation of cable services to Powell's which was in full force and effect at the time of the aforementioned collision, and is therefore liable for the actions and/or inactions of its sub-contractor, Powell's and its employees."

Summary Judgment, which the trial court granted. Plaintiffs' claims against MCC and Zurich were dismissed with prejudice.

After a bench trial,[3] the trial court rendered judgments against Powell's Cable[4] and awarded damages in favor of four of the five consolidated plaintiffs[5]: Everett Harris - $9,782.00; Lionel Jones - $151,730.17; Willie Wilson - $100,418.46; and Courtney Gillard - $31,251.00.

Mr. Gillard filed a Motion for New Trial and/or to Amend Judgment, asserting that Mr. Powell should be held personally liable. Powell's Cable filed a Motion and Order for Appeal as to the final judgments of Lionel Jones, Mr. Wilson, and Mr. Harris.[6] The Motion and Order for Appeal noted that Mr. Gillard's Motion for New Trial remained pending. The trial court granted Mr. Gillard's Motion for New Trial. This Court, based on Mr. Gillard's pending new trial, stayed all consolidated matters on August 13, 2018. The stay was extended on May 6, 2019, and November 4, 2020. However, the new trial had not yet occurred. Accordingly, this Court lifted the stay on March 10, 2022. Powell's Cable's appeal of the judgments in favor of Lionel Jones, Mr. Wilson, and Mr. Harris followed.

Powell's Cable asserts that Plaintiffs failed to prove that the accident occurred while Karren Jones was in the course and scope of her employment and that the trial court erroneously asked Mr. Powell a question on the witness stand.

---

[3] Mr. Powell was not represented by counsel during the bench trial.
[4] At the time of trial, Powell's Cable was the only remaining defendant.
[5] The estate of Mr. White settled and dismissed all of his claims with prejudice.
[6] The lawsuits were consolidated, but the trial court issued an individual judgment for each lawsuit.

*STANDARD OF REVIEW*

"In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error—clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So. 2d 90, 98. "[O]ne of the basic tenets of the manifest error standard of review is that 'reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently.'" *Id.*, 03-1734, pp. 10-11, 874 So. 2d at 99 (quoting *Parish Nat. Bank v. Ott*, 02-1562, p. 7 (La. 2/25/03), 841 So. 2d 749, 753). We "may not merely decide" if we would have made different factual determinations. *Hall*, 03-1734, p. 9, 874 So. 2d at 98.

To justify reversing factual determinations, we must 1) "find from the record that a reasonable factual basis does not exist for the finding" made by the trial court and 2) "determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882 (La. 1993) (quoting *Mart v. Hill*, 505 So. 2d 1120, 1127 (La. 1987)). "Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart*, 617 So. 2d at 883.

"A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial." *Evans v. Lungrin*, 97-0541, 97-0577, p. 7 (La. 2/6/98), 708 So. 2d 731, 735. "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Id.* "[W]here one or

5

more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable." *Provosty v. Arc Constr., LLC*, 15-1219, p. 13 (La. App. 4 Cir. 11/2/16), 204 So. 3d 623, 632. "[I]f the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Id*.

The review of questions of law require appellate courts to utilize the *de novo* standard of review. *Johnson v. Orleans Par. Sch. Bd.*, 14-0277, p. 9 (La. App. 4 Cir. 4/26/17), 219 So. 3d 452, 462.

### *TRIAL TESTIMONY*

#### *Everett Harris*

Everett Harris testified, via deposition, that he was sixty years old at the time of trial and was a passenger on the JPT bus at the time of the accident. Mr. Harris stated that he missed a couple weeks of work because of the accident and sought approximately $900 in lost wages. Mr. Harris testified that he was sitting behind the driver, next to a window, and was "all the way to the back." Mr. Harris described the accident as follows:

> I was sitting in the back seat. Everybody just sitting there. The bus going straight down the way he always go. Then that big old truck come up the interstate to get on Airline Highway and just (witness makes a sound) we heard something hit the bus.

He stated that the bus was stopped when the Powell's Cable truck struck them on the driver's side by the driver's window. Mr. Harris alleged that six or seven people fell on the floor of the bus. Then Mr. Harris clarified and stated that the bus was moving and stopped after being struck. Mr. Harris also contended that the Powell's Cable truck did not drive off because "[i]t was still stuck on the bus like that. It was still catching that bus." Mr. Harris testified that there was a "big

6

dent" on the bus and the mirror was "hanging down." He did not see any damage to the Powell's Cable truck.

On impact, Mr. Harris stated that he hit his head and neck on the window and hit his left shoulder "on that big old piece of iron." Mr. Harris testified that the accident made him "[a] little dizzy." EMTs on scene "rubbed something on my shoulder, some kind of medicine." Mr. Harris described his shoulder pain as "[l]ike you got a toothache or something. It was stinging me." After the accident, Mr. Harris stated he was about an hour late to work. Mr. Harris testified that his wife picked him up from work early that day so he could seek medical treatment.

The next day, Mr. Harris stated he was "hurting and sore" and he went back to the clinic. He continued going to the same clinic twice a week. Mr. Harris stated that he was discharged from care about five months prior to his deposition. He classified his continuing pain as "[s]till aching a little bit, like a little toothache." Mr. Harris testified that his "shoulder gets stiff and [he] can't lit [sic] it all the way" and that he cannot sleep on his left side. Overall, Mr. Harris stated that his condition improved "[a] little bit." Mr. Harris was later laid off from his job, but he sometimes cuts grass for work.

### *Lionel Jones*

Lionel Jones testified that he worked as a bus operator for JPT for twenty years. Lionel Jones stated that he generally drove a bus five days a week or about forty hours a week. Lionel Jones testified that he was driving a JPT bus on March 16, 2012, west towards the airport on Airline Highway. He brought the bus to a "complete stop" for the ingress and egress of passengers. Then, the Powell's Cable truck, "from nowhere, slammed in the side of the bus and tore the side mirror off." Lionel Jones stated that the Powell's Cable "truck hit me and kept going." He

illuminated as follows:

> So as the truck proceeded down Airline Highway, I tried
> to catch up with him, but the light managed to change.
> That's how I caught up with him, and I'm flagging,
> letting the lady know that she just slammed in the side of
> my bus. So she immediately pulled over, and that's
> when the police was [sic] called.

The driver of the Powell's Cable truck was Karren Jones. Lionel Jones stated that Karren Jones was driving "a work truck" that was clearly marked with the Powell's Cable information. Karren Jones told Lionel Jones she was employed by Powell's Cable.

Lionel Jones testified that when the bus was struck, he hit his left elbow and lower back. At the time of the accident, Lionel Jones experienced pain in his shoulder and "chest area." The day after, Lionel Jones complained of lower back pain and sought medical treatment "a couple days after." Lionel Jones stated that he went to Team Care and received "electric stimulation," but his pain did not completely resolve. Lionel Jones was then referred to Dr. Bartholomew and Dr. Aprill. He received "about three" injections, but the injections did not help. Lionel Jones stated that he still suffers from neck pain and back pain that "flares up sometime [sic]." Lionel Jones testified that his pain affects his ability to perform tasks at home and that he can no longer be intimate with his wife as often as he would like.

*Willie Wilson*

Mr. Wilson was passenger on the bus and agreed with Lionel Jones' description of the accident. He stated that the bus was at a complete stop when it was struck by Powell's Cable truck. Mr. Wilson was seated at the time of the impact and felt pain in his neck and back. Mr. Wilson testified that he first sought

8

medical treatment about two to three days after the accident. His pain did not resolve, so he was referred to Dr. Bartholomew. Dr. Bartholomew then referred Mr. Wilson to Dr. Aprill. Mr. Wilson received one injection in his neck and two in his back for injuries related to the accident. He stated that the injections helped temporarily, but that he continues to experience pain in his neck and lower back. Mr. Wilson testified that his pain worsens if he attempts to be more active. He takes medication for the pain.

### *Courtney Gillard*

Mr. Gillard[7] testified that he was sitting on the rear driver's side of the bus facing forward at the time of impact and described the accident as follows:

> Well, the bus stopped like, I think like a half block or a block past the Job Corps, and the bus was picking up some people and letting some people off, and a truck, the cable truck hit the bus and proceeded on, and the bus pulled over and took our information from the accident.
> 
> \*      \*      \*
> 
> My shoulder was on the windowsill, and the windowsill, you know, pushed me away and back towards the windowsill.

Following impact, Mr. Gillard felt pain in his shoulder, neck, and lower back. Mr. Gillard continued to work after the accident, but asked to leave work early due to pain.[8]

### *Frank Powell, Jr.*

Mr. Powell, the sole owner of Powell's Cable, testified that at the time of the accident, he employed Karren Jones. Mr. Powell stated that Karren Jones would drive a Powell's Cable truck as part of her employment responsibilities. He stated that MCC erroneously removed the truck involved in the accident from the work

---

[7] Again, we note that Mr. Gillard's claims are not presently before us.
[8] The details of Mr. Gillard's injuries and medical treatment are omitted.

insurance policy when he requested to remove a wholly separate vehicle. Mr. Powell testified that he continues to conduct business as Powell's Cable and works under contracts in Louisiana, Mississippi, Alabama, and Texas. As a result of the accident, Mr. Powell spent $6.00 to repair a mirror on the Powell's Cable truck. The trial court judge asked Mr. Powell one question: "Miss Jones, who was operating the vehicle on the day of the accident, was she operating within the course and scope of her employment with you?" Mr. Powell replied affirmatively.

### *COURSE AND SCOPE OF EMPLOYMENT*

Powell's Cable contends that Plaintiffs failed to prove all of the elements necessary for finding Powell's Cable vicariously liable for the accident caused by Karren Jones. Specifically, Powell's Cable avers that Plaintiffs did not show that Karren Jones was working in the course and scope of her employment at the exact time of the accident. For example, Powell's Cable stated: "[t]hus, to recover against a putative employer on a claim of *respondeat superior*, a plaintiff must affirmatively prove that ***at the time of the incident sued upon***, the employee was acting in the course and scope of his employer."

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. C.C. art. 2320. "To find liability of an employer under the doctrine of respondeat superior" three elements must be present: 1) "an employer/employee relationship; 2) a negligent or tortious act on the part of an employee; and 3) the act complained of must be committed in the course and scope of employment." *Alphonse v. Omni Hotels Mgmt. Corp.*, 94-0157, p. 5 (La. App. 4 Cir. 9/29/94), 643 So. 2d 836, 840. The Louisiana Supreme Court expounded on this doctrine as follows:

> An employer is answerable for the damage occasioned by his servant in the exercise of the functions in which the servant is employed. La.Civ.Code art. 2320. In the application of Article 2320, an employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which is within the course and scope of employment. *Reed v. House of Decor, Inc.*, 468 So.2d 1159, 1161 (La.1985); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70 (5th ed. 1984). Whether an employee is within the course and scope of his employment is a question that is only answerable by general rules, because of the unending contexts in which the question may arise. Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. W. Page Keeton et al., *supra*.

*Orgeron on Behalf of Orgeron v. McDonald*, 93-1353, p. 4 (La. 7/5/94), 639 So. 2d 224, 226-27.

"An employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business." *Id.*, 93-1353, p. 4, 639 So. 2d at 227. "The dispatching of employees to different work locations gives rise to many 'shades of gray' in the otherwise "black and white" applications of the going and coming rule." *Id.*, 93-1353, p. 5, 639 So. 2d at 227. For example, "[w]hen an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place." *Id.* "[M]ore than a short duration for the personal errand is needed to justify a deviation falling within the course and scope of employment, *i.e.*, weighing all of the factors that increase the risks of exposing the employer to vicarious liability." *Timmons v. Silman*, 99-

3264, p. 7 (La. 5/16/00), 761 So. 2d 507, 512.

Powell's Cable contends that Plaintiffs were required to prove that Karren Jones was acting in the course and scope of her employment at the moment of impact. In the present matter, it is undisputed that Karren Jones was an employee of Powell's Cable on the day of the accident, that she drove a Powell's Cable truck as part of her job duties, and that she was operating the Powell's Cable truck when it struck the JPT bus. Mr. Powell testified that Karren Jones was operating within the course and scope of her employment with Powell's Cable that day. "[T]he district court's determination that a particular act is within the course and scope of employment for purposes of vicarious liability is a factual finding governed by the manifest error rule." *Baumeister v. Plunkett*, 95-2270, p. 7 (La. 5/21/96), 673 So. 2d 994, 998. To reiterate, "'this standard of review mandates that this court can only reverse a lower court's factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes that the finding is clearly wrong.'" *Id*., (quoting *Emoakemeh v. Southern University*, 94-1194, p. 6 (La. App. 1st Cir. 4/7/95), 654 So. 2d 474, 477-78). Accordingly, given the above evidence presented at the trial and the standard of review, we do not find that the trial court committed manifest error by finding Karren Jones was working within the course and scope of her employment at the time of the accident.

### *ROLE OF TRIAL COURT JUDGE*

Powell's Cable contends that the trial court judge "plainly exceeded his role as impartial trier of fact and instead acted as Plaintiffs' advocate by seeking to establish an essential element of Plaintiffs' claims when he questioned Mr. Powell." While Mr. Powell was on the witness stand, the following colloquy

occurred between the trial court judge and Mr. Powell:

THE COURT:

> Miss Jones, who was operating the vehicle on the day of the accident, was she operating within the course and scope of her employment with you?

THE WITNESS:

> Yes, sir.

"A trial judge has discretion in conducting a trial." *D.M.S. v. I.D.S.*, 14-0364, p. 17 (La. App. 4 Cir. 3/4/15), 225 So. 3d 1127, 1138. "The court may question witnesses, whether called by itself or by a party." La. C.E. art. 614(B). However, "the trial court must maintain impartiality and avoid becoming an advocate for either side." *State in Interest of A.J.*, 14-0595, p. 7 (La. App. 4 Cir. 10/1/14), 151 So. 3d 659, 665. "The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." La. C.C.P. art. 1631(A). "The trial judge has great discretion in the manner in which the proceedings are conducted before the court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened." *D.M.S.*, 14-0364, p. 17, 225 So. 3d at 1138.

Testimony adduced already established that Karren Jones was an employee of Powell's Cable and that she was driving the Powell's Cable truck at the time of the accident. The trial court judge did not attempt to try plaintiffs' case, but was, perhaps, seeking clarification. *See Patin v. DeStevens*, 415 So. 2d 1011, 1012 (La. App. 4th Cir. 1982) (this Court found "[h]e only did what could be expected of any competent judge in a default judgment proceeding, as he was merely trying to elicit facts which had been omitted, but were pertinent in deciding the case"). Further,

the dangers possible from a judge questioning a witness are lessened in a bench trial "'because there is no jury to confuse or mislead.'" *Ledet v. Ledet*, 04-509, p. 5 (La. App. 5 Cir. 3/29/05), 900 So. 2d 986, 989 (quoting *Williams v. W. Preferred Cas. Ins. Co.*, 465 So. 2d 191, 194 (La. App. 3rd Cir. 1985)). Thus, having reviewed the record, we do not find that the trial court judge's singular question presented a gross abuse of discretion.[9] Therefore, Powell's Cable's assignment of error lacks merit.

## *DECREE*

For the above-mentioned reasons, we find that the trial court did not err by finding Plaintiffs established that Karren Jones was in the course and scope of her employment with Powell's Cable when the accident occurred. We also find that the trial court did not abuse its vast discretion by asking Mr. Powell one question while he was on the stand. The judgment of the trial court is affirmed.

**AFFIRMED**

---

[9] We note that no contemporaneous objection was lodged by Mr. Powell.