292 So.2d 216 (1974)
Sim LeBRANE, Individually and as the Administrator of his minor child, Charles LeBrane, Plaintiff-Appellant-Applicant,
v.
James LEWIS et al., Defendants-Appellees-Respondents.
No. 53800.
Supreme Court of Louisiana.
March 25, 1974.
Gary L. Keyser, Dozier & Thompson, Baton Rouge, for plaintiffs-applicants.
A. G. Seale, James H. Morgan, III, Seale, Smith & Phelps, Baton Rouge, for defendants-respondents.
TATE, Justice.
The court of appeal held that the defendant employer was not liable in tort for the act of its supervisor in stabbing a discharged *217 employee who was still on the employment premises. 280 So.2d 572 (La. App. 1st Cir. 1973). We granted certiorari to review the employer's liability, if any, by reason of the doctrine of respondeat superior. 282 So.2d 139 (La.1973).
1. The Issue
The essential issue thus raised before us is whether, at the time of the intentional tort, the supervisor was acting within the scope of his employment. If so, therefore his employer is liable for the damages caused by this tort.
We also denied the supervisor's application for certiorari. 282 So.2d 140 (La. 1973). Thus, the factual determination is now final that the supervisor committed a tort against the former employee. Likewise final, due to the failure of any party to seek further review of it, is the determination that the employee is not entitled to workmen's compensation benefits because the stabbing occurred after his employment had terminated.
2. The Facts
Charles LeBrane, then 17, was employed as a kitchen helper for the Capitol House Hotel.[1] His immediate supervisor was Lewis, the kitchen steward.
On the day of the injury, LeBrane arrived late for work. Lewis told him to take the rest of the day off and to get a haircut, since the hotel manager did not want bushy-haired employees on the food premises. LeBrane hung around an hour or so and, despite several warnings by Lewis, refused to leave. Lewis, who has authority to hire and fire, then terminated LeBrane's employment. He had LeBrane sign a termination slip[2] and took him upstairs to the hotel manager's office for his termination pay.
The manager was out, so Lewis and LeBrane then rode down the elevator again. On the way down a heated and profane argument ensued, with, in the trial court's finding, each "more or less inviting each other outside".
On the way out, Lewis and LeBrane commenced fighting. Whoever the initial aggressor, the factual finding now final is that Lewis, in stabbing LeBrane as he tried to run away, used excessive force and is liable in tort.
The final stabbing took place within the loading premises at the basement level of the hotel. This was away from the kitchen, but still on the hotel premises enroute to the basement exit from the hotel.
3. The Law and its Application Here
In Louisiana, as elsewhere, an employer (master) is liable for a tort committed by his employee (servant) if, at the time, the servant is acting within the scope of his employmentacting, as our Civil Code Article 2320 phrases it, "in the exercise of the functions in which . . . employed." Article 2320; Blanchard v. *218 Ogima, 253 La. 34, 215 So.2d 902 (1968); Comment, 33 La.L.Rev. 110 (1972).
In the present case, the supervisory employee knifed and seriously injured a former co-employee on the employment premises in an employment-related dispute at or soon after the time of the co-employee's discharge by the supervisor. At least insofar as discharging the injured employee and ordering him off the premises, the supervisor was acting within the course and scope of his employment.
In holding that, nevertheless, the stabbing did not occur during the course and scope of the employment, our brethren of the intermediate court reasoned: "In our view when LeBrane and Lewis reached the basement of the hotel on the service elevator and each invited the other outside to fight, what followed had nothing to do with Lewis' employment. The altercation had at this point become a purely personal matter between LeBrane and Lewis." 280 So.2d 580.
In so concluding, we believe our brethren of the intermediate court were in error.[3]
The dispute which erupted into violence was primarily employment-rooted. The fight was reasonably incidental to the performance of the supervisor's duties in connection with firing the recalcitrant employee and causing him to leave the place of employment. It occurred on the employment premises and during the hours of employment.
In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. It can thus be regarded as within the scope[4] of the supervisor's employment, so that his employer is liable in tort to third persons injured thereby.
See: Wisemore v. First Nat. Life Ins. Co., 190 La. 1011, 183 So. 247 (1938); Nash v. Longville Lumber Co., 148 La. 943, 88 So. 226 (1921); Matthews v. Otis Mfg. Co., 142 La. 88, 76 So. 249 (1917); Vincent v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541 (1917); Gann v. Great Southern Lumber Co., 131 La. 400, 59 So. 830 (1912); Howard v. Hardware Mutual Cas. Co., 253 So.2d 555 (La.App. 1st Cir. 1971), certiorari denied, 260 La. 19, 254 So.2d 620 (1971); Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App. 1st Cir. 1970), certiorari denied, 256 La. 255, 236 So.2d 32 (1970); Lewis v. State, 176 So.2d 718 (La.App. 1st Cir. 1965), certiorari denied, 248 La. 364, 178 So.2d 655 (1965); Marie v. Dennis Sheen *219 Transfer, Inc., 134 So.2d 407 (La.App. 1st Cir. 1961). See also: Annotation, Assault by Servant, 34 A.L.R.2d 372 (1954); 2 Harper & James, The Law of Torts, Sections 26.6-26.9 (1956); Prosser on Torts, Section 70 (4th ed. 1971); Restatement on Agency Second, Sections 219, 228, 229, 245 (1958).
The decisions relied upon by the appellant, insofar as pertinent, are distinguishable or not controlling. In the main, they involved tortious conduct by an employee appreciably after he had completed his employment function or else so peripherally related to it as to be considered without the scope of the employment. See, e. g.: Mendel v. W. G. Coyle Co., 153 La. 1056, 97 So. 38 (1923); Hale v. Gilliland Oil Co., 151 La. 500, 91 So. 853 (1922); Strawder v. Harrall, 251 So.2d 514 (La. App. 1st Cir. 1971); Terito v. McAndrew, 246 So.2d 235 (La.App. 1st Cir. 1971); Bradley v. Humble Oil and Refining Co., 163 So.2d 180 (La.App. 4th Cir. 1964), certiorari denied, 246 La. 587, 165 So.2d 483 (1964).
Unlike the employees in the cited cases, the present employee's tortious conduct occurred while the employee was at least partly actuated by his purpose of acting for his employer in the discharge of the recalcitrant co-employee (Restatement, cited above, Section 228), and it was reasonably consequent upon or incident to his performance of his employment function of hiring and firing sub-employees (Restatement, cited above, Section 229). The tortious conduct (which had also occurred within the authorized time and space limits of the employment, Restatement, cited above, Sections 228, 233, 234) was thus within the scope of employment. The supervisor Lewis's employer is therefore liable for the damages caused by his tort at work.
Conclusion
For the reasons above stated, we find that the judgment should be amended so as to hold (see Footnote 1) Lewis's employer, the Jack Tar Management Company, and its liability insurer, the Fireman's Fund Insurance Company, solidarily liable with Lewis to the plaintiff. The now-final judgment of the trial court held Lewis, the supervisory employee, liable to the plaintiff in the amount of $16,055.30 general and special damages, together with interest and costs.
However, the record supports no basis for a judgment against the co-defendants (see Footnote 1) H & K Corporation, apparent owner of the hotel premises, the Jack Tar Capitol House (a trade name, not a business entity), or Larsen, the general manager of the hotel. As to the latter (an executive officer of the corporate employer of the injured boy), no personal fault is shown so as to make him liable to the plaintiff father. See Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Accordingly, the judgment of the court of appeal is affirmed insofar as it dismissed the plaintiff's claims against the defendants Ronald T. Larsen, the H & K Corporation, and the Jack Tar Capitol House; but it is reversed insofar as it affirmed the dismissal of the demands of the plaintiff against the Jack Tar Management Company and its insurer, the Firemen's Fund Insurance Company. The trial court judgment is amended so as to hold these latter two defendants solidarily liable with the defendant James Lewis to the plaintiff in the full amount of principal, interest, and costs for which Lewis is cast. The said two defendants are taxed with all costs of the appeal and of review in this court.
Trial and Court of Appeal judgments amended in part.
NOTES
[1] This hotel is operated under the trade-name of "Jack Tar Capitol House" by the Jack Tar Management Company, the employer of LeBrane and Lewis. The premises were apparently owned by the H & K Corporation. These corporations were insured by the Fireman's Fund Insurance Company under a comprehensive general liability policy (see Article 9 of answer) insuring them, inter alia, for tort liability arising out of the negligent or intentional conduct of their employees. The two corporations and their insurer, together with the general manager of the hotel (Larsen) and the kitchen supervisor (Lewis) who stabbed the boy, are made defendants in this action by the boy's father (Sim LeBrane) to recover for damages resulting from the then-minor's personal injuries. Although the boy was not substituted for his father as a party after he reached majority, the authority of the father to prosecute the suit in the boy's name is continued until such formal substitution is made. La.C.Civ.P. art. 805 (1968).
[2] The reason for firing stated by Lewis in this termination slip was: "Refusing to leave after being given the rest of the day off."
[3] The error was partially induced by the intermediate court's conclusion that the course and scope of employment must be interpreted strictly in tort cases, citing Terito v. McAndrew, 246 So.2d 235 (La.App. 1st Cir. 1971). The course-and-scope requirement may be liberally construed in workmen's compensation cases. However, aside from isolated expressions in intermediate opinions, we find no modern authority to support the holding that the requirement be strictly construed in favor of the employer in tort cases.
[4] The phrases "within the scope of employment", "in the course of employment", and "in the course and scope of employment" have virtually indistinguishable meanings when used in the present context. Prosser on Torts 460-61 (4th ed. 1971); 57 C.J.S. Master and Servant § 570b. However, technically, "course of" may refer more to the time and place of employment, while "scope of" refers more to while being engaged in the functions for which employed. Godchaux v. Texas & P. Ry. Co., 144 La. 1041, 81 So. 706 (1919); Comfort v. Monteleone, 163 So. 670 (La.App.Orl. 1935). The increasing trend is to test the employer's liability in tort by criteria similar to those used in applying the "arising out of and in the course of employment" test in workmen's compensation cases. See: Small, The Effect of Workmen's Compensation Trends on Agency-Tort Concepts of Scope of Employment, 11 NACCA L.J. 19 (1953) (Part I) and 12 NACCA L.J. 21 (1953) (Part II); Harper & James, The Law of Torts, Supplement to Vol. 2 at p. 613 ("Comment to Section 26.9 nn. 16-20") (1968); Restatement of Agency Second, Appendix, pp. 391-99 (1958).