726 So.2d 485 (1999)
Dimetrius DUNMILES
v.
ST. CHARLES PARISH RECREATION DEPARTMENT.
No. 98-CA-831
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1999.
*486 Roger S. Bernstein, Radlauer & Bernstein, New Orleans, Louisiana, Attorney for Plaintiff/Appellant.
Alan A. Zaunbrecher, Metairie, Louisiana, Attorney for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
GOTHARD, Judge.
Plaintiff, Dimetrius Dunmiles, appeals a judgment of the trial court which finds in favor of the defendant and dismisses plaintiff's demands. For reasons that follow, we affirm.
Plaintiff was a participant in the Job Training Partnership Act (JTPA) program in St. Charles Parish. In the petition for damages, plaintiff asserts that he was physically injured in an attack by another participant in the program, Dimetrius Robinson, defendant herein. Mr. Dunmiles filed suit against the St. Charles Parish Recreation Department, a political subdivision of the Parish of St. Charles.
At trial the parties stipulated that a judgment against JTPA or the St. Charles Recreation Department would equate to a judgment against St. Charles Parish. It was further stipulated that both Mr. Dunmiles and Mr. Robinson were employees of one or all three entities during the day of the incident, although no stipulation was made that either man was acting in the course and scope of that employment at the time of the incident.
Sue Agnelly, the director of the JTPA program, testified at trial. She explained that the JTPA program has a summer program called QD, which is a Federal program to help youths in the community ages fifteen to twenty-one develop employability skills. Both Mr. Dunmiles and Mr. Robinson were participants in the program. The program has several different work sites. Program participants' duties would include picking up trash and cutting grass at various parks serviced by St. Charles Parish. Fighting is not an activity which would be done in connection with the work assigned by supervisors of the program. Ms. Agnelly testified that she would expect that a program supervisor who saw a problem develop between two participants would become involved to solve the problem. She stated that she received no notice of any altercation between these two youths before the one which forms the basis for this lawsuit.
The court also heard testimony from Sergeant Drauzin Kinler of the St. Charles Parish Sheriff's Department. Sergeant Kinler testified that he conducted an investigation of the incident in question and made a report in accordance with normal procedures. According to the report, Sergeant Kinler was notified of the incident at about 3:45 p.m. and arrived on the scene at 3:52 p.m. After an interview with the plaintiff, Sergeant Kinler went to the hospital where Mr. Dunmiles was transported to speak to the treating physician concerning the nature of Mr. Dunmiles' injuries. Sergeant Kinler was not successful in locating Mr. Robinson, who had left the scene before the Sergeant arrived.
*487 Mr. Dunmiles also testified at trial. He stated that in July, 1996 he was eighteen years old and a third year participant in the summer jobs program. He was employed with the Parish Recreation Department. His duties included cutting grass, cleaning up and picking up trash. He stated that on the day in question, he was scheduled to leave at 3:30 p.m. Just before that time, he returned from the job site to the trailer in a truck driven by his supervisor, Chris Hill. As he waited to "clock out", another member of the crew, Dimetrius Robinson, got out of the truck and punched Mr. Dunmiles. Mr. Dunmiles "grabbed" Mr. Robinson and the two men started wrestling in front of the trailer. Mr. Robinson threw Mr. Dunmiles to the ground causing him to break his wrist. At that point the fight stopped. Mr. Dunmiles went into the trailer and reported the incident. Mr. Robinson left about ten minutes later. Mr. Dunmiles spoke to a police officer who was called to the scene, and was then transported to Charity Hospital in New Orleans for treatment. His injuries required surgery and he remained in the hospital for three days. Mr. Dunmiles also testified concerning the extent of his injuries and pain throughout the ordeal.
Mr. Dunmiles also stated that he had been involved in a previous altercation with Mr. Robinson on payday, a day or two before the incident at issue herein. In that prior incident, Mr. Robinson threw a pair of goggles at Mr. Dunmiles. Mr. Robinson was riding in a parish truck driven by Chris Hill, and Mr. Dunmiles was riding by on his bicycle. Mr. Dunmiles was unhurt in that incident.
On cross examination Mr. Dunmiles maintained that Mr. Robinson and his friends have tried to "jump him" twice. At trial Mr. Dunmiles testified that he did not report the problems between him and Mr. Robinson to his supervisor, but he did tell someone with the Parish, although he could not remember who. This testimony is conflicting with his deposition in which he stated that he told no one from the Parish or JTPA about the problems. Mr. Dunmiles also admitted that he had completed his duties for the day and was free to go at the time of the incident. He was not wearing a watch and there was no clock in the trailer.
Also contained in the record, and considered by the trial court, is the deposition of Chris Hill, who supervised both men in the JTPA program. He states that on July 19, 1996, the day of the incident, he supervised both Mr. Dunmiles and Mr. Robinson. They had worked at the West Bank Bridge Park that day. The normal procedure was to return the youths to the trailer after their work for the day was completed, where they would wait until 3:30 to leave.
On the day in question, the crew completed their work without incident and returned to the trailer. Mr. Hill was sitting in his truck filling out time sheets when another worker, Marcus Mott, came over and called a fight to Mr. Hill's attention. Mr. Hill and a parish employee, Glenn Singleton, went over to the location of the fight; they arrived just as Mr. Robinson threw Mr. Dunmiles to the ground. Mr. Dunmiles got up and began yelling and running. Several other workers came out of the trailer and tried to calm him down. They brought him into the trailer and stayed with him until the police and an ambulance arrived. Mr. Robinson left the scene shortly after the incident.
Mr. Hill testified that there was one prior incident which occurred between the two youths at the start of the summer program several weeks before the July 19, 1996 incident, in which Mr. Robinson threw goggles at Mr. Dunmiles. At the time, Mr. Robinson was riding in the truck with Mr. Hill. Mr. Hill stated that he stopped the truck and reprimanded Mr. Robinson. Since that time Mr. Hill kept the men in separate groups. Mr. Hill testified that he never observed any other occasions in which the men had any sort of disagreement.
Mr. Hill explained that the program participants would meet every morning at seven at the parish maintenance area, which is fenced and has a trailer. In the fenced area, the parish stores various pieces of equipment. Some of the workers, like Mr. Dunmiles, would ride their bikes and park them in the fenced area. They would be taken to various job sites by parish vehicle and returned to this fenced area just before 3:30 to go home. *488 The fight took place inside the fenced area near the trailer.
After trial the court rendered judgment in favor of defendant, St. Charles Parish, dismissing plaintiff's action. The judgment is accompanied by written reasons for judgment in which the trial court applied the factors presented in LeBrane v. Lewis, 292 So.2d 216 (La.1974) to the matter at issue, and found no liability.
The finding that a certain act is within the course and scope of employment for the purposes of vicarious liability is a factual finding subject to the manifest error/clearly wrong standard of review. Ermert v. Hartford Insurance Co., 559 So.2d 467, 478 (La.1990); Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 998. Accordingly, we will review the finding under that standard.
It has long been established that an employer can be liable for the torts of its employees under the doctrine of respondeat superior. In Louisiana, that rule of law is embodied in LSA C.C. article 2320 which states in pertinent part that "(m)asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed". In LeBrane v. Lewis, supra, the Supreme Court considered the circumstances under which a defendant employer can be held liable in tort for the intentional actions of an employee. The LeBrane court concluded that an employer can be held liable when, at the time of the intentional tort, the supervisor was acting within the scope of his employment. To determine an employer's liability, the court fashioned four factors, as follows:
1. whether the tortious act was primarily employment rooted;
2. whether the violence was reasonably incidental to the performance of the employee's duties;
3. whether the act occurred on the employer's premises; and
4. whether it occurred during the hours of employment.
More recently in Baumeister v. Plunkett, supra, at 673 So.2d 994, the Supreme Court reviewed the law in this area and explained:
.......... In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1356 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (1992) (quoting LeBrane v. Lewis, 292 So.2d 216, 217, 218 (La.1974)).
"An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." Scott v. Commercial Union Ins. Co., 415 So.2d 327, 329 (La.App. 2d Cir.1982) (citing Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La.App. 4th Cir.1964)). "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." Id.

The Baumeister court used the LeBrane factors and further explained:
This does not mean that all four of these factors must be met before liability may be found. The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment. (Citations omitted)

Baumeister v. Plunkett, supra 673 So.2d at 997.
In conclusion, the Baumeister court, at 673 So.2d 1000, stated:
In sum, there is no magical formula to establish vicarious liability for intentional torts committed by employees. We do hold, however, that as a matter of law an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. There must additionally *489 be at least some evidence that the intentional act was reasonably incidental to the performance of the employee's duties or that the tortious act was primarily employment rooted.
(Citations omitted)
In the instant matter, the trial court applied the facts to the four factors in LeBrane and found that the incident which forms the basis of the action was neither primarily employment rooted, nor incidental to the performance of the employee's duties. Given the facts as presented at trial, we find no manifest error in that decision. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.