829 So.2d 1141 (2002)
Lillie CAMPBELL
v.
Hilton A. VERRETT, Jr., Josephine Scarbrough and Clarendon National Insurance Company.
No. 02-0695.
Court of Appeal of Louisiana, Third Circuit.
October 30, 2002.
*1142 Chuck D. Granger, Morrow, Morrow, Ryan & Bassett, Opelousas, LA, for Lillie Campbell.
J. Brad Smitherman, Shreveport, LA, for Clarendon National Insurance Company.
Carol S. Hunter, Briney & Foret, Lafayette, LA, for Hilton A. Verrett, Jr.
Court composed of JOHN D. SAUNDERS, MICHAEL G. SULLIVAN, and ELIZABETH A. PICKETT, Judges.
SAUNDERS, Judge.
This case arose out of a personal injury claim filed by Lillie Campbell. Ms. Campbell was injured while she was a passenger in an Ford F-250 truck driven by Hilton A. Verrett. At the time of the accident, the vehicle Mr. Verrett was driving was designated as a work automobile insured under the name of his employer, Josephine Scarbrough. Summary judgment was granted in favor of Ms. Scarbrough and the vehicle's insurer, Clarendon National *1143 Insurance Company, on the basis that Mr. Verrett was not in the course and scope of his employment nor had permission to use the vehicle at the time of the accident that caused Ms. Campbell's injuries. At this time, Mr. Verrett and Ms. Campbell appeal the trial court's judgment granting summary judgment in favor of Clarendon National Insurance Company.

FACTS AND PROCEDURAL BACKGROUND
On August 1, 1999, The plaintiff Lillie Campbell was injured in an automobile accident while she was a passenger in a vehicle driven by Hilton A. Verrett, Jr. On the evening of the accident, Mr. Verrett was driving a Ford F-250 truck, owned by his employer, Defendant Josephine Scarbrough. Mr. Verrett was employed by Ms. Scarbrough as a delivery person for her nursery. Subsequent to his employment, Mr. Verrett used two vehicles insured by Ms. Scarbrough. One is the Ford F-250 at issue in this case and one is a smaller Nissan pick-up truck. Mr. Verrett owned a set of keys to each vehicle. He was to use the Ford F-250 for employment purposes only, but was allowed to use the Nissan truck for personal use.
On the afternoon of August 1, 1999, Mr. Verrett used the Ford truck to make a delivery to Dallas. That evening, Ms. Scarbrough took the Nissan truck that Mr. Verrett usually used for personal errands home with her. Subsequently, Mr. Verrett was left with the Ford Truck which he took home that evening. Later that evening, long after the end of the work day, he accompanied Ms. Campbell to a party. Even though Mr. Verrett did not obtain permission from Ms. Scarbrough, he took her in Ms. Scarbrough's Ford truck because Ms. Scarbrough had taken the Nissan truck and also because Ms. Campbell had a prosthetic leg and would be more comfortable in a larger truck.
Apparently, on the way home from the party, the vehicle suffered a blowout after Mr. Verrett struck the curb of a bridge in Evangeline Parish. Subsequently, Ms. Campbell instituted an action for damages against Mr. Verrett for negligence and against Ms. Scarbrough and her insurer Clarendon Insurance Co. (hereinafter "Clarendon") under a theory of "respondent superior" alleging that Mr. Verrett was in the course and scope of his employment with Ms. Scarbrough at the time of the accident.
On November 19, 2001, Ms. Scarbrough and her insurance company, Clarendon filed a Motion for Summary Judgment denying that Mr. Verrett was in the course and scope of his employment at the time of the incident and also denying that Mr. Verrett obtained permission to use the vehicle on the night of the incident. The motion was set for oral argument on January 8, 2002. The trial court ruled that there was no genuine issue of material fact on the issue of course and scope or permissive use, and subsequently granted Defendants' Motion for Summary Judgment on January 28, 2002. The claims against Ms. Scarbrough and Clarendon were dismissed with prejudice. Plaintiff then filed a Motion for New Trial which was subsequently denied on April 8, 2002, by the trial court. Both Ms. Campbell and Mr. Verrett have appealed the trial court's summary judgment in favor of Ms. Scarbrough and Clarendon.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, Defendant Hilton A. Verrett, Jr. and Plaintiff Lillie Campbell assert the following assignments of error:
(1) the trial court erred when determining that Hilton A. Verrett, Jr. was in the course and scope of his employment with Defendant Josephine *1144 Scarbrough at the time of the accident; and
(2) even if Hilton A. Verrett, Jr. was not in the course and scope of his employment, he was using the vehicle under the permission of Josephine Scarbrough.

ANALYSIS
ASSIGNMENT OF ERROR NO. 1
Ms. Campbell's counsel asserts in its brief that Ms. Campbell has abandoned this assignment of error. Mr. Verrett's counsel lists course and scope as its first assignment of error, but makes no argument suggesting that Mr. Verrett was, in fact, within the course and scope of his employment at the time of the incident. Mr. Verrett's counsel argues under this assignment of error that whether or not Mr. Verrett was in the course and scope of his employment at the time of Ms. Campbell's injury is immaterial because as long as the employee's use of the vehicle is permissive, then the injured person is covered. We recognize that this argument is misplaced and that it belongs within the second assignment of error regarding permissive use of the vehicle by Mr. Verrett. However, this court will analyze the course and scope of Mr. Verrett for purposes of this appeal.
This court recognizes that appellate courts are to review Motions for Summary Judgment de novo under the same criteria as the trial court's consideration of whether a summary judgment is appropriate. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992). Accordingly, for the foregoing reasons, we find that this assignment of error is without merit and that the trial court did not err when ruling that there was no genuine issue of material fact on the issue of course and scope of Mr. Verrett's employment.
As a general rule, the jurisprudence has identified four factors to consider in making a vicarious liability determination, including whether the tortious act: (1) was primarily employment rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during work hours; and (4) occurred on the employer's premises. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974); Samuels v. Southern Baptist Hospital, 594 So.2d 571, 573 (La.App. 4 Cir.), writ denied, 599 So.2d 316 (La.1992). It is not necessary that each of the factors be present in each case and each case must be decided on its own merits. Id. Under the LeBrane test, an employer is responsible for the negligent acts of its employee when the conduct is so closely connected it time, place and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business. Orgeron v. McDonald, 93-1353, 639 So.2d 224, 227 (La.1994). The scope of the risks attributable to an employer increases with the amount of authority and freedom of action granted to the employee in performing the assigned tasks. Ermert v. Hartford Insurance Company, 559 So.2d 467, 477 (La.1990). However, an employer is not responsible for an employee's conduct that is motivated by purely personal considerations entirely extraneous to the employer's interests. LeBrane v. Lewis, 292 So.2d at 218.
According to the record, Mr. Verrett is employed as a delivery person for Ms. Scarbrough's nursery. On August 1, 1999, Mr. Verrett decided to use his work vehicle supplied by Ms. Scarbrough to take Ms. Campbell to a party. The accident occurred at approximately midnight on August 1, 1999, long after the work day had ended. Mr. Verrett admits in his deposition that he was not performing any activities at the time of the accident that were related to his employment with Ms. *1145 Scarbrough. The pertinent part of Mr. Verrett's deposition appears below.
Q: Now at the time of the accident moving forward, I believe you said you had left your house was it around 7:00 o'clock at night, 6:00 o'clock that night?
A: Yes, sir. Something like that.
Q: Okay. Now at the time you weren't performing any work, you weren't delivering anything for the nursery, is that right?
A: No sir, I was not.
Q: Okay, You weren't on the clock for the nursery?
A: No, sir, I was not.
Q: Okay. At that time, from the time you left your house to go to the party until the time of the accident, did you do any work at all for the nursery?
A: No, sir, not once I had the truck cleaned. That was it.
Q: Okay. So you understood when you left that you were not to be aid by Ms. Scarbrough?
A: Yes, sir, I understood that.
It is clear from this testimony that Mr. Verrett was not within the course and scope of his employment during the time of the accident. Furthermore, it is clear from Mr. Verrett's testimony above and the from the facts of this case that Mr. Verrett's conduct does not satisfy any factors of the LeBrane test. Specifically, driving Ms. Campbell to the party in Ms. Scarbrough's truck was not conduct that was primarily employment rooted; not reasonably incidental to performance of employment duties; it did not occur during work hours; and it did not occur on the employer's premises. This court finds that Mr. Verrett was engaged in a purely personal undertaking, entirely extraneous to Ms. Scarbrough's interests, when he chose to use her truck to accompany the plaintiff to a social function. Thus, there remains no genuine issue of material fact on the issue of course and scope. Summary Judgment on this issue was proper.

ASSIGNMENT OF ERROR NO. 2
In the second assignment of error, Ms. Campbell and Mr. Verrett assert that even if Mr. Verrett was not in the course and scope of his employment, he was using the vehicle with the permission of Ms. Scarbrough. The parties contend that, because Mr. Verrett had initial permission to use the vehicle and the accident occurred during Mr. Verrett's deviation from the initial permission, he should be covered under the omnibus clause in the policy issued by Clarendon to Ms. Scarbrough. We again, find that this assignment of error is without merit and that Mr. Verrett was not using the vehicle with the permission of Ms. Scarbrough, nor did the incident occurs during a deviation from initial permission.
Under Louisiana law, to make coverage effective under the omnibus clause, the plaintiff must prove by a preponderance of the evidence that the initial use of the vehicle was done with express or implied permission of the insured. Perkins v. McDow, 615 So.2d 312 (La.1993). Once consent express or implied is granted by the insured to use the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. Manzella v. Doe, 94-2854 (La.12/8/95); 664 So.2d 398. Coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle. Id. Thus, under Ms. Scarbrough's policy, if Mr. Verrett operated the vehicle under initial permission he obtained from Ms. Scarbrough then subsequently deviated from that initial permission on the evening *1146 of the incident, Ms. Campbell's injuries should be covered by the omnibus clause in the Clarendon policy.
"Initial permission" issues generally arise in instances where the named insured, in this case Ms. Scarbrough, has acquiesced or failed to object to the use of the vehicle. The "initial permission rule" allows the innocent injured person to be compensated and avoid financial disaster. Norton v. Lewis, 623 So.2d 874 (La.1993). Although this court sympathizes with Ms. Campbell, Mr. Verrett's testimony is clear that Ms. Scarbrough did not acquiesce of fail to object to personal use of the vehicle. The parties previously discussed personal use and determined that this vehicle was for nursery deliveries and employment related activities only. This is not a case of deviation from initial permission granted. Mr. Verrett did not deviate from permission granted to him, because, according to Mr. Verrett's testimony, he did not have any permission whatsoever to drive the vehicle that evening. Mr. Verrett's relevant deposition testimony appears below:
Q: So the night of the accident, you knew you didn't have permission to use the vehicle?
A: Not for going off to a party, no, sir.
Q: Because you understood the vehicle was supposed to be used for the nursery purposes, business of the nursery, is that correct?
A: Yes, sir.
...
Q: But my question was you don' t think Ms. Scarbrough would have given you permission to take this vehicle and you didn't believe you had permission tot use this vehicle that night to go to a party, did you?
A: I didn't have permission.
It is clear from this testimony that Mr. Verrett did not have initial permission, express or implied, to use the vehicle on the evening of the incident. Although Mr. Verrett had permission to use this vehicle for work purposes earlier that day in order to make a delivery to Dallas, that permission was revoked at the end of the work day, as soon as the vehicle was parked in his driveway after the last delivery.
Since this is not an "initial permission" case, we must analyze whether or not Mr. Verrett obtained permission, express or implied, to use the Ford truck on the evening of the incident for personal use. Mr. Verrett testified that he was allowed to take either the Ford or the Nissan home at the end of the work day, but knew that he could not use the Ford for personal errands. He testified that it was "understood" that the Ford was for business purposes only, because the Ford was how they made their living. On the work day before the incident, Ms. Scarbrough took the Nissan truck home and Mr. Verrett was left to take the Ford truck. It flows from this fact pattern that personal use of the Nissan, the vehicle he usually took home for personal use, would impliedly transfer to the Ford, the vehicle he was left with by Ms. Scarbrough, unless Ms. Scarbrough limited that permission specifically.
According to Mr. Verrett and Ms. Scarbrough's testimony, permission for use of the Ford was limited by Ms. Scarbrough. Mr. Verrett's testimony is very clear as to the issue of personal use of the Ford truck. He states that this truck was never to be used for personal errands and that it was "understood" that he was not to use the Ford truck for such. This knowledge is tantamount to Mrs. Scarbrough specifically stating to Mr. Verrett, after the work day ended, that the he no longer had permission to use the Ford truck for any other purpose that day. Mr. Verrett did not obtain the necessary permission, *1147 express or implied, to use the Ford truck, as he specifically states in his testimony "I did not have permission [to use the vehicle]." Accordingly, summary judgment on this issue was proper, as there remains no genuine issue of material fact as to permissive use.

DECREE
For the above reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Mr. Verrett and Ms. Campbell.
AFFIRMED.