849 So.2d 836 (2003)
Thomas MENSON, et al.
v.
Wendell K. and Rosie J. TAYLOR, Capital Transportation Corporation and XYZ Insurance Company.
No. 2002 CA 1457.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Rehearing Denied July 30, 2003.
*838 Terry L. Bonnie, Scott Fruge, Baton Rouge, for Appellees Plaintiffs Thomas Menson and Gloria Menson.
Michael Colvin, Baton Rouge, for Appellant Defendant State Farm Fire and Casualty Co.
Wendell G. Lindsay, Jr., Baton Rouge, for Appellants Defendants Capital Transportation Corporation, et al.
Donald R. Smith, Baton Rouge, for Wendell K. Taylor and Rosie J. Taylor.
Panel composed of Judges FRANK FOIL, JAMES E. KUHN and WILLIAM F. KLINE, Jr.
FOIL, J.
This appeal challenges a damage award entered against an employer for an intentional tort committed by one employee on his fellow employee. We affirm.

BACKGROUND
This lawsuit stems from an incident involving two employees of Capital Transportation Corporation (CTC). On March 20, 1996, Wendell Taylor, a CTC bus driver, was driving a bus on the Tigerland route at the LSU campus in Baton Rouge. According to Taylor, he was preparing to make what he thought was his final run of the day when he was told by his supervisor, Yvonne Parns, he would have to make an additional trip. Mr. Taylor stated that after picking up several passengers, he was so angry over having to drive the additional route he became teary eyed and pulled the bus over to the side of the road to avoid possible injury to his passengers.
Soon thereafter, Thomas Menson, a CTC route supervisor, saw the bus parked on the side of the road and pulled his vehicle behind the bus. He went to question Taylor to see if anything was wrong with the bus. Taylor advised Menson that the bus was running well; however, he wanted to know why he had to make another trip. Menson did not offer a reason but simply told Taylor to drive the bus and headed back towards his car.
Taylor and Menson offered vastly different accounts of the events that transpired thereafter. According to Menson, Taylor ran towards him screaming, grabbed his neck, threw him to the ground and jumped on his leg and knee. Menson stated that Taylor straddled his body, and began slapping him, threatening to kill him. At the time of the incident, Menson was 55 years old and weighed 185 pounds, while Taylor was in his thirties and weighed about 280 pounds.
Taylor, however, stated that he merely walked up to Menson and grabbed Menson's shirt to get his attention to find out why he had to make the additional trip. He admitted that he ripped Menson's shirt, and stated that Menson merely slipped and fell to the ground. He insisted that he had no intention of hurting Menson, and denied ever getting on top of Menson, hitting him or doing anything to Menson's ankle or shoulder. He stated that after Menson fell, Menson remained on the ground, still talking on his radio to headquarters.
*839 Following the incident, Menson was taken to a medical clinic, where x-rays revealed two broken bones in his foot. He also sustained knee and shoulder pain as a result of the encounter. Taylor was arrested by LSU Police for assault.
On December 27, 1996, Menson and his wife, Gloria, filed this tort suit seeking damages against Taylor, Taylor's wife, and CTC. They later added as a defendant State Farm Fire & Casualty Company (State Farm), the Taylors' homeowner's insurer.
State Farm filed a motion for summary judgment, which was granted by the trial court. State Farm appealed, and this court affirmed the dismissal of State Farm from the action in Menson v. Taylor, XXXX-XXXX (La.App. 1 Cir. 4/17/00), 764 So.2d 1079 (hereafter referred to as Menson I). In that case, we held that regardless of which version of the incident one believed, State Farm was not liable. This court specifically found that if Taylor's version was accepted, the mere "grabbing incident" he described was clearly a "workrelated" accident, and as worker's compensation would be Menson's exclusive remedy against Taylor, State Farm likewise was immune from tort suit.
However, this court stated, if Menson's version of the incident was accepted, which described a violent physical attack by Taylor, the State Farm policy clearly and unambiguously excluded coverage for bodily injury resulting from "willful and malicious acts of the insured." This court stated that there could be no doubt that the actions of one who violently attacked another person from behind, throwing that person to the ground, jumping on him and breaking his ankle, striking him and threatening to kill him are both willful and malicious.[1]
Prior to trial, the Mensons filed a motion in limine arguing that this court held in Menson I that Menson and Taylor were in the course and scope of their employment at the time of the incident, and therefore, the Taylors and CTC should be precluded from arguing to the contrary at all phases of the trial. The trial judge ruled that this court had indeed held that Taylor was in the course and scope of his employment with CTC at the time of the incident, and therefore, CTC was vicariously liable if Taylor acted intentionally. That ruling, the judge concluded, was the law of the case, and she precluded CTC from offering evidence regarding Taylor's job duties for CTC and CTC's objectives. She stated that the jury would decide whether Taylor's actions were intentional and the amount of damages due Thomas Menson. Because the parties stipulated prior to trial that Gloria Menson's claim was less than $50,000.00, that issue was to be decided by the trial judge.
Following the presentation of the evidence, the jury returned a verdict finding that Taylor's actions were intentional, and awarding Thomas Menson damages in the amount of $266,850.33. The jury assessed 90% fault to Taylor and 10% to Menson. CTC was given a credit of $118,246.78, representing 90% of the total medical expense and worker's compensation indemnity payments made by CTC, as stipulated to by the parties. The judge dismissed Gloria Menson's consortium claim, finding that she failed to sustain her burden of proving she was entitled to such damages.
*840 This appeal, taken by CTC and Gloria Menson, followed.

LAW OF THE CASE
At the outset, we address the trial judge's application of the law of the case doctrine so as to preclude a determination of CTC's vicarious liability. CTC argues that the law of the case doctrine did not apply in this case, citing Trans La. Gas v. La. Insurance Guaranty Association, 96-1477, p. 6 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896. In that case, this court made it clear that the principle is applicable to prior rulings disposing of identical issues in the same proceeding involving the same parties. The doctrine should not apply, CTC argues, because the issues were not identical and the earlier appeal involved rights and obligations of different parties.
We agree. This court's decision in Menson I did not address the issue of CTC's vicarious liability. Rather, that case dealt only with the issue of whether Taylor's homeowner's insurer was entitled to dismissal by summary judgment. This court held that regardless of which version of the incident the jury believed, the insurer could not be held liable as a matter of law. Further, the appeal involved different parties. Therefore, we find that the trial judge erred in applying the law of the case principle to preclude CTC from addressing the vicarious liability issue at trial.

VICARIOUS LIABILITY
In finding Taylor's actions to be intentional, the jury obviously accepted Menson's version of the incident which described a brutal attack on him by a fellow employee. This finding has not been appealed. At issue in this appeal is whether CTC can be held vicariously liable for Taylor's intentional, physical attack on his supervisor. This court will consider the evidence proffered by CTC on the vicarious liability issue, along with the evidence in the record, and determine de novo whether CTC is vicariously liable for Taylor's intentional tort. See, Gonzales v. Xerox, 320 So.2d 163, 165 (La.1975).
An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Under the jurisprudence, an employer is responsible for an employee's intentional tort when the conduct is so closely connected in time, place and causation to the employment that it constitutes a risk of harm attributable to the employer's business. LeBrane v. Lewis, 292 So.2d 216 (La.1974). In LeBrane, 292 So.2d at 218, the court considered the following factors in holding an employer liable for its supervisor's actions in stabbing a co-employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the act was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
It is not necessary that all four factors be met in order to find liability. Baumeister v. Plunkett, 95-2270, p. 4 (La.5/21/96), 673 So.2d 994, 997.
The third and fourth factors are easily met in this case, as the altercation occurred during working hours along CTC's transportation route. We next determine whether Taylor's actions were primarily employment-rooted.
Workplace violence is not primarily employment-rooted merely because the violence occurred at work as the result of an incident that took place at work. Instead, *841 to be primarily employment-rooted, courts look to the degree to which the tortious act was prompted by an employee's purely personal considerations as opposed to an employee's duties and the employer's interests. Guy v. Mitchell, 35,713, p. 6 (La. App. 2 Cir. 3/1/02), 810 So.2d 1245, 1248.
Where an altercation between two employees occurs during work hours and on the business premises, and that altercation can be said to be employment-rooted, vicarious liability generally has been found. See Benoit v. Capitol Manufacturing Company, 617 So.2d 477 (La.1993) (imposing vicarious liability on an employer where two co-employees fought over whether a door to the workplace should be left open because of the temperature; the court found the intentional act was employment-rooted where the temperature of the workplace was an employment issue); LeBrane v. Lewis, supra (imposing vicarious liability on an employer where the tort evolved out of a dispute relating to the employment; the employee who committed the violent act was acting for his employer in the discharge of a recalcitrant co-employee).
In this case, Taylor's attack on Menson was clearly employment-rooted. Taylor did not want to drive an additional route and Menson ordered him to drive the route. The dispute thus directly arose out of Taylor's duty to provide transportation on behalf of CTC. Because the attack evolved out of a transportation dispute between two employees of a transportation company, occurring during work hours and on the work premises, we conclude that the intentional tort is one that can be fairly attributable to CTC's business. Therefore, we hold that CTC is vicariously liable for Taylor's intentional tort.

EVIDENTIARY ISSUES
CTC contends that Menson's damages should be reduced, urging that the trial court should have allowed it to introduce evidence showing that Menson had a habit of dealing with other employees in an abrasive, abusive manner, which, CTC insists, likely fueled the attack by Taylor. The trial judge sustained Menson's objection that this was impermissible character evidence. CTC asks this court to review the excluded evidence and impose 50% liability on Menson for provoking the incident.
Taylor testified that there were no personal issues or problems between himself and Menson other than the driving of the additional route. There is no evidence to indicate that Menson behaved abrasively or abusively toward Taylor prior to the altercation. In fact, Menson simply ordered Taylor to drive the bus and refused to give him a reason. Thus, any other incidents in which Menson may have dealt harshly with other employees on other occasions are not relevant in this case, and were properly excluded by the trial court.
Lastly, CTC contends that the trial judge erroneously precluded it from offering evidence that Menson received disability insurance payments. CTC argues that Menson's receipt of such benefits explains why he "dragged his feet" in returning to work. CTC asks this court to reduce Menson's award for lost income by the amount of damages he failed to mitigate. However, we find that the trial judge correctly applied the collateral source rule to exclude evidence of disability payments. See Aucoin v. Doerner, 98-255 (La.App. 5 Cir. 8/25/98), 717 So.2d 1239. Furthermore, the jury obviously considered Menson's ability to mitigate his damages when it awarded him only $35,000.00 in past lost earnings, although the stipulated amounts were in excess of $80,000.00.

*842 LOSS OF CONSORTIUM CLAIM
Gloria and Thomas Menson were married in 1991 and at the time of the trial, a divorce proceeding was underway. Gloria testified that prior to the incident, she and her husband had an active sex life, went out to dinner and movies and traveled. After the incident, she stated, her husband became hostile and irritable, and began staying out all night. Both Gloria and Thomas testified they no longer had sex after the attack because of Thomas' depression, which was fueled by the financial hardships he experienced because of the accident.
The record also reflected that Menson suffered from an aneurism in his stomach, not related to the work-incident, and was not able to work for a significant period of time. Menson stated in an earlier deposition that he and his wife continued to have sex after the accident on a regular basis, which ceased after the aneurism was diagnosed.
The trial judge found that Gloria Menson failed to prove that she suffered a loss of love and affection, society and companionship, sex and support. The judge noted that the marriage was of a short duration and was beset with problems from the outset. Considering the evidence, we find no error in the judge's conclusion that appellant failed to meet her burden of proof, and we may not disturb that ruling.

CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Capitol Transportation Corporation.
AFFIRMED.
Judge WILLIAM F. KLINE, Jr., Retired, serving Pro Tempore by special appointment of the Louisiana Supreme Court.
NOTES
[1] Prior to trial, CTC filed a motion for summary judgment on the issue of vicarious liability, The motion was denied by the trial court. CTC sought writs to this court, which were denied. Menson v. Taylor, 00-0662 (La. App. 1 Cir. 8/24/00). Writs were also denied by the Supreme Court. Menson v. Taylor, 2000-2685 (La.11/17/00), 774 So.2d 983.