HUGHES, J.
| sIn this appeal, the plaintiffs and a defendant/homeowner’s insurer appeal from the trial court’s grant of summary judgment in favor of a corporate defendant, sued for the allegedly tortious actions of an employee; the summary judgment dismissed with prejudice all claims against the corporate defendant. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On May 19, 2006, while Jonathan Drum-mond was visiting Adam Fakouri, both of whom were seventeen years old, Adam accidentally shot Jonathan in the chest and stomach with a Colt .38 caliber handgun. As a result of the gunshot, Jonathan sustained severe and disabling injuries, including paralysis below the chest.
On May 16, 2007, Jonathan Drummond, Rodney Drummond, and Norma Lynne Drummond filed a petition for damages against: Adam Fakouri; Adam’s parents, Elias Jacob Fakouri and Jerry Fakouri; and the Fakouris’ homeowner’s insurer, Safeco Insurance Company of America (Safeco).[1] Thereafter, plaintiffs filed a first supplemental and amended petition, naming as additional defendants: E. Jacob Construction, Inc. d/b/a Fakouri Construction, Inc. (E. Jacob Construction) and J.J.C.D.A. Family, LLC (J.J.C.D.A. Family), companies owned by the Fakouris; and Clarendon America Insurance Company (Clarendon), the commercial general liability insurer of E. Jacob Construction and J.J.C.D.A. Family. In the supplemental and amended petition, plaintiffs alleged that the gun at issue was used “as a tool of business by Mr. Elias Jacob Fakouri for protection when traveling to [4and from his rental properties, offices, and/or warehouse.” Mr. Fakouri is a building contractor, and E. Jacob Construction is his construction business. J.J.C.D.A. Family is another family business, which owns rental property.
According to the petition, the gun was normally kept in Mr. Fakouri’s work truck, which was used for his work with E. Jacob Construction and for J.J.C.D.A. Family. Plaintiffs further alleged that, because Mr. Fakouri was having work performed on the truck, he had removed the gun from his work truck and brought it into his home, where he sometimes performed business activities for E. Jacob Construction and J.J.C.D.A. Family. Thus, plaintiffs contended that Mr. Fak-ouri was acting in the course and scope of his employment with E. Jacob Construction and J.J.C.D.A. Family, when he removed the loaded gun from his work truck and negligently left the gun in an unsafe place, where it was accessible to minors, thereby rendering defendants E. Jacob Construction, J.J.C.D.A. Family, and Clarendon liable for Jonathan Drummond’s injuries.
E. Jacob Construction then filed a motion for summary judgment, contending *114 that it was entitled to judgment in its favor, as a matter of law, because Mr. Fakouri, who was shopping at Wal-Mart at the time of the shooting, was not conducting any business for E. Jacob Construction at the time Jonathan was shot. Moreover, with regard to plaintiffs’ contention that the gun was used as a tool of business by Mr. Fakouri, for his protection while traveling to various work sites, E. Jacob Construction asserted that, regardless of the veracity of that allegation, Mr. Fakouri’s protection was not at issue at the time that Jonathan was shot, nor was Mr. Fakouri traveling to or from those work sites when the accident happened. Thus, E. Jacob Construction argued that because the gun was not being used for any purpose related to or benefitting the business at the time of Jonathan’s | «injury, E. Jacob Construction was entitled to judgment in its favor, dismissing it from the suit with prejudice.
Following a hearing on the motion, the trial court granted the motion and rendered judgment dated January 15, 2009, dismissing with prejudice plaintiffs’ claims against E. Jacob Construction.[2] From this judgment, plaintiffs and Safeco appeal.[3] Plaintiffs assign the following as error: (1) the trial court erred in its apparent decision to grant summary judgment to E. Jacob Construction by deciding a highly disputed, inherently factual question in E. Jacob Construction’s favor as movant, namely by deciding that certain acts committed by Mr. Fakouri were not committed while in the course and scope of his employment with E. Jacob Construction; (2) the trial judge erred in substituting his own judgment based on his own experiences in carrying a gun, for that of a jury after a full trial, and by crediting an inap-posite and irrelevant hypothetical based on his own beliefs and feelings regarding his own gun-carrying activities; and (3) to the extent the trial court’s decision was based upon a determination that the acts and omissions of Mr. Fakouri were not negligent, the trial court erred because there are clear issues of disputed material fact as to whether the acts and omissions in question constituted negligence.
In its single assignment of error, Safeco avers that the trial court erred in granting summary judgment in favor of E. Jacob Construction.
1 «DISCUSSION
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to *115 material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, 2002-1072, p. 5 (La.4/9/03), 842 So.2d 373, 377; Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30.
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. Hines v. Garrett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial 17on that issue and summary judgment is appropriate. Id., 2004-0806 at p. 1, 876 So.2d at 765-66.
On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. LSA-C.C.P. art. 966(C)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in LSA-C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). See also Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority, 2007-0107, p. 9 (La.App. 1 Cir. 2/8/08), 984 So.2d 72, 79-80; Cressionnie v. Intrepid, Inc., 2003-1714, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
The record before us establishes that Mr. Fakouri was the construction supervisor for E. Jacob Construction, his family-owned construction business.[4] His duties as construction supervisor included traveling to existing job sites, supervising all E. Jacob Construction jobs, and bidding on | sconstruction jobs. According to Mr. Fak-ouri, because of his job duties, he would spend about ninety percent of his work day traveling in his truck, which, at the time of the shooting accident, was a 2003 Chevrolet C 1500 owned by E. Jacob Construction. He considered his truck to be his “mobile office,” where he kept files on all E. Jacob Construction jobs.
*116 In his deposition, offered by E. Jacob Construction in support of its motion for summary judgment, Mr. Fakouri testified that all his life, he had carried a gun with him any time he was driving, for personal protection, including when he was with his kids or on vacation. With regard to the particular gun at issue in this case, Mr. Fakouri testified that he personally owned the gun and that he normally kept it in his work truck, carrying the gun with him for protection when he visited the company warehouse, which he described to be in a “less desirable” or “rougher” area of town.
Mr. Fakouri further testified that he “liked” guns and collected them, though he was not “an avid shooter.” Mr. Fakouri enumerated guns that he had in his collection, as including: a Ruger .22 automatic handgun, a Beretta .40 caliber pistol, a Browning 9 millimeter handgun, a 12-gauge automatic shotgun, a 12-gauge double-barrel shotgun, an AR .15 rifle, a Glen-field .22 bolt action rifle, a .223 Mini 14 rifle, and about five Winchester 30/30 lever action “cowboy version” rifles. Mr. Fak-ouri stated that he keeps his gun collection in a locked bedroom closet, though he thought Adam knew where the key to the closet was kept.
Mr. Fakouri further testified that he did not have a home office in his residence (located on Goodwood Boulevard), but rather, E. Jacob Construction had a separate office (located on Richcroft Avenue). Mr. Fakouri stated that he did not like to do work at home, but would sometimes look over paperwork after his family went to bed.
| ¡)Prior to the accidental shooting at issue, Mr. Fakouri had removed all of his work papers and the gun from his company truck in order to have the truck serviced. When Mr. Fakouri took the gun out of his work truck, he placed the loaded gun on the counter portion of a china cabinet in the breakfast area of his home. The china cabinet was a “catch all place” for him, where he would put his keys, coins, and work papers. About two days after Mr. Fakouri placed the loaded gun on the china cabinet in his home, his son Adam accidentally shot Jonathan Drum-mond when he tripped over a threshold while carrying the gun after having taken it from the china cabinet to show it to Jonathan.
Thus, the question presented herein is whether the actions of Mr. Fakouri, as owner of and construction supervisor for E. Jacob Construction, in placing a loaded gun on a china cabinet in his home while his work truck was being serviced, were in the course and scope of his employment with E. Jacob Construction and, thus, could result in E. Jacob Construction being vicariously liable for those actions.
Regarding liability of E. Jacob Construction as Mr. Fakouri’s employer, the principle of vicarious liability is derived from LSA-C.C. art. 2320, which provides in part, “[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” (Emphasis added.) Pursuant to LSA-C.C. art. 2320, an employer can be held liable for an employee’s tortious conduct only if the injuring employee is acting within the course and scope of his employment. Ellender v. Neff Rental, Inc., 2006-2005, p. 5 (La.App. 1 Cir. 6/15/07), 965 So.2d 898, 901.
Generally, courts consider four factors when assessing vicarious liability, including whether the tortious act: (1) was primarily employment [inrooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during working hours; and (4) occurred on the employer’s premises. LeBrane v. Lewis, *117 292 So.2d 216, 218 (La.1974); Ellender, 965 So.2d at 901. See also Dickerson v. Piccadilly Restaurants, Inc., 99-2633, p. 4 (La.App. 1 Cir. 12/22/00), 785 So.2d 842, 845.
Under the LeBrane test, the determinative question is whether the employee’s tortious conduct was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interest. Ellender, 965 So.2d at 901 (quoting LeBrane v. Lewis, 292 So.2d at 218); Dickerson v. Piccadilly Restaurants, Inc., 785 So.2d at 844.
After due consideration of this case on de novo review, we find the factors enunciated in the above-cited cases of LeBrane, Ellender, and Dickerson, when applied to the specific facts and circumstances presented herein, do not result in a conclusion that the negligent storage of Mr. Fakouri’s personal handgun, in his residence, is imputable to his employer, E. Jacob Construction.
Firstly, we note that the negligent storage of the handgun did not occur within normal working hours, nor did it occur on E. Jacob Construction’s premises. While it is arguable that unloading a work vehicle in preparation to have it serviced was “reasonably incidental to performance of employment duties,” we do not find that the subsequent storage of Mr. Fakouri’s personally owned handgun was “primarily employment rooted.” While it could be more convincingly argued that the act of removing the handgun from the E. Jacob Construction-owned work truck was in furtherance of E. Jacob Construction’s interest in obtaining mechanical |n service for the truck, the continued allegedly negligent storage of the weapon several days afterward, in the employee’s personal residence, was too far removed from the original arguably work-related activity to be considered employment rooted. We conclude that as a personally owned item of property, contained within the employee’s personal residence for several days, any negligence in the storage of the gun was likewise personal at that point in time. LeBrane''⅛ determinative test simply cannot be answered in the affirmative under the facts of this case; it cannot reasonably be said that Mr. Fakouri’s allegedly tor-tious conduct was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interest. We conclude that storage of one’s personal property in one’s home several days after cessation of any work-related activities involving that property is clearly unconnected to the employer’s interest.
Consequently, we find the trial court correctly determined that E. Jacob Construction was entitled to summary judgment dismissing the claims against it.
CONCLUSION
For the reasons stated herein, the January 15, 2009 judgment dismissing with prejudice the claims against E. Jacob Construction, Inc. d/b/a Fakouri Construction, Inc. is affirmed; each party is to bear his own costs of this appeal.
AFFIRMED.

. Safeco was originally named in the plaintiffs’ petition as "Safeco National Insurance Company;" however, in its answer Safeco named itself "Safeco Insurance Company of America” and stated that it had been erroneously named in the petition.

. Clarendon also filed a motion for summary judgment, averring that it had no liability because: (1) Mr. Fakouri was not acting in the course and scope of his employment with E. Jacob Construction or J.J.C.D.A. Family at the time of the accident; (2) Mr. Fakouri was not an insured person under the Clarendon policy; and (3) Mr. Fakouri, E. Jacob Construction, and J.J.C.D.A. Family at no time acted negligently or breached any duty owed to plaintiffs. The trial court also granted Clarendon’s motion for summary judgment, and that judgment is the subject of the related appeal in Drummond v. Fakouri, 2009 CA 1062, 25 So.3d 249, 2009 WL 5554589, also decided by this court on this date.

. While defendants Elias Jacob Fakouri, Jerry Fakouri, and Adam Fakouri were listed along with Safeco in the motion and order for appeal as appellants, the appellate briefs filed with this court list only defendant Safeco as appellant.

. Although Mr. Fakouri in his deposition also stated that he was the "owner” of E. Jacob Construction, no testimony or other evidence was introduced into the record to establish the corporate structure of the company.